1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

7
8

| | |
|---|---|
| ABSHER CONSTRUCTION COMPANY, a Washington corporation, and PACIFIC COMPONENTS, INC., a Washington Corporation, d/b/a ABSHER PACIFIC JOINT VENTURE, | NO. |
| Plaintiffs, | COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT |
| v. | |
| NORTH PACIFIC INSURANCE COMPANY, an Oregon insurance company, ONEBEACON INSURANCE COMPANY, a Pennsylvania insurance company, ONEBEACON AMERICA INSURANCE COMPANY, a Massachusetts insurance company, PENNSYLVANIA GENERAL INSURANCE COMPANY, a Pennsylvania insurance company, and ASSURANCE COMPANY OF AMERICA, a New York insurance company. | |
| Defendants. | |

9
10
11
12
13
14
15
16
17
18
19
20
21

## I.     Parties

22
23
24
25
26

1.1     <u>Absher-Pacific</u>.  Absher Pacific Joint Venture ("Absher Pacific") is a Washington joint venture composed of Absher Construction Company, a Washington corporation, and Pacific Components, Inc. a Washington corporation.   Upon information and belief, Pacific Components was dissolved in December 2008.

COMPLAINT - 1
[CV-                    ]
G:\Docs\1\21195\PLD\ABSHER COMPLAINT - NORTH PACIFIC AND ONE
BEACON.docx

**THORSRUD CANE & PAULICH**
A PROFESSIONAL SERVICE CORPORATION
1300 PUGET SOUND PLAZA
1325 FOURTH AVENUE
SEATTLE, WA  98101
(206) 386-7755

1.2    North Pacific.  Upon information and belief, North Pacific Insurance Company is an Oregon-domiciled stock property and casualty insurer, which was owned by OneBeacon Insurance Company until 2002, when it was acquired by Liberty Northwest Insurance Corporation.

1.3    One Beacon.  Upon information and belief OneBeacon Insurance Company is a Commonwealth of Pennsylvania insurance business corporation with its principal place of business in Boston, Massachusetts.  OneBeacon Insurance is the administrator of the insurance policies at issue in the action.

1.4    One Beacon America.  Upon information and belief OneBeacon America Insurance Company is a Massachusetts insurance company with its principal offices in Canton, Massachusetts.

1.5    Penn General.  Upon information and belief Pennsylvania General Insurance Company is a Commonwealth of Pennsylvania insurance business corporation with its principal place of business in Boston Massachusetts, and is a wholly owned subsidiary of OneBeacon Insurance Company.

1.6    Assurance.  Upon information and belief Assurance Company of America is a New York insurance company with its principal place of business in New York, New York, and is a subsidiary of Zurich American Insurance Company.

## II.    Jurisdiction and Venue

2.1    Jurisdiction.  This Court has original diversity jurisdiction over this civil action between a Washington municipal corporation and foreign entities, as provided in 28 U.S.C. § 1332.  This complaint seeks recovery of damages in excess of $1 million.  Therefore, the amount in controversy exceeds the amount provided in 28 U.S.C. § 1332(a).

COMPLAINT - 2
[CV-                    ]
G:\Docs\1\2195\PLD\ABSHER COMPLAINT - NORTH PACIFIC AND ONE
BEACON.docx

**THORSRUD CANE & PAULICH**
A PROFESSIONAL SERVICE CORPORATION
1300 PUGET SOUND PLAZA
1325 FOURTH AVENUE
SEATTLE, WA  98101
(206) 386-7755

2.2     <u>Venue</u>.  Venue is proper in this court because events or omissions giving rise to the claim occurred in this district, namely, defendant insurers insured a person, property or risk located in this judicial district.

### III.   FACTS

3.1     <u>NewHolly development</u>.  In 1997, Seattle Housing Authority created a plan to redevelop Holly Park, a low-income multi-family residential community.  The redeveloped community was called NewHolly.  Absher-Pacific, a joint venture between Absher Construction Company and Pacific Components, was the general contractor for Phase I of New Holly.

3.2     <u>PTI subcontract</u>.  In 1999, Absher Pacific hired a subcontractor, Plumbing Today Inc. ("PTI"), to design and install hydronic heating systems in the NewHolly development.  The subcontract required PTI to obtain insurance naming Absher Pacific as an additional insured without reservation or limitation.  A copy of the subcontract is attached as Exhibit A.

3.3     <u>NewHolly suit</u>.  On March 25 2008, the NewHolly Homeowners Association filed a lawsuit against Seattle Housing Authority ("SHA"), alleging latent construction defects in the hydronic heating systems in NewHolly, and claims for breach of fiduciary duties by SHA.

3.4     <u>SHA suit</u>.   On November 26, 2008, SHA brought suit against Absher Construction Company and Pacific Components.  A copy of the complaint in *Seattle Housing Authority v. Absher Construction Company, et al.*, King Cty. Superior Ct. No. 08-2-41044-7 SEA is attached as Exhibit B.

3.5     <u>SHA allegations</u>.  The complaint in the SHA suit claims that Absher Pacific breached its duty to defend and indemnify SHA from all claims arising from the work on the NewHolly project, that Absher-Pacific failed to obtain insurance coverage for SHA as required by contract, that Absher-Pacific breached its contract and express warranty and was negligent in

COMPLAINT - 3
[CV-            ]
G:\Docs\1\2195\PLD\ABSHER COMPLAINT - NORTH PACIFIC AND ONE
BEACON.docx

**THORSRUD CANE & PAULICH**
A PROFESSIONAL SERVICE CORPORATION
1300 PUGET SOUND PLAZA
1325 FOURTH AVENUE
SEATTLE, WA  98101
(206) 386-7755

performing its work by providing and installing defective components, and was negligent in providing services.  SHA alleged that the joint venturers were jointly and severally liable.  The alleged damages included the cost of repairing property damage caused by negligence, loss of use, and defense costs.

 3.6 <u>Tender</u>.  In April 2009 Absher Pacific tendered its defense of the SHA suit to PTI and its insurers.

 3.7 <u>North Pacific policies</u>.  PTI was insured by North Pacific Insurance Company from 7/29/1999 through 7/29/2001 under policies no. C01-147974 and C02-147974.

 3.8 <u>Penn General policies</u>.  PTI was insured by Pennsylvania General Insurance Company from 7/29/2001 through 7/29/2002 under policy no. OOR808958.

 3.9 <u>One Beacon policy</u>.  PTI was insured by OneBeacon America Insurance Company from 7/29/2002 through 7/29/2003 under policy no. COR808958.

 3.10 <u>Assurance Company policy</u>.  PTI was insured by Assurance Company of America from 6/14/98 to 6/14/2000 under policy no. SCP31370126.

 3.11 <u>Response to tender by OneBeacon</u>.  On May 13, 2009, OneBeacon Insurance responded to the tender as administrator of the North Pacific, Penn General and One Beacon insurance policies and on behalf of all these insurers, refusing to defend or indemnify Absher Pacific on the ground that the policies did not provide additional-insured coverage to Absher Pacific for the claims alleged in the SHA suit.  Attached as Exhibit C is a copy of OneBeacon's denial of coverage letter sent to Absher Pacific's counsel.

 3.12 <u>No response to tender by Assurance</u>.  Absher Pacific tendered the claims to Assurance twice.  Assurance made no response to either tender letter.

COMPLAINT - 4
[CV-     ]
G:\Docs\1\2195\PLD\ABSHER COMPLAINT - NORTH PACIFIC AND ONE
BEACON.docx

**THORSRUD CANE & PAULICH**
A PROFESSIONAL SERVICE CORPORATION
1300 PUGET SOUND PLAZA
1325 FOURTH AVENUE
SEATTLE, WA  98101
(206) 386-7755

3.13   Settlement.   Both *NewHolly Homeowners Association v. Seattle Housing Authority*, King Cty. Superior Ct. No. 08-2-10108-8 SEA and *Seattle Housing Authority v. Absher Construction Company, et al.*, King Cty. Superior Ct. No. 08-2-41044-7 SEA were settled and the claims against Seattle Housing Authority and Absher Pacific were released, without contribution by any of the defendant insurers.

3.14   No One Beacon or Assurance participation.   The defendant insurers refused to participate in settlement of the claims against Absher Pacific.

## IV.   Causes of Action

### A. Declaratory Judgment

4.1   Incorporation.   Plaintiffs Absher and Pacific incorporate by reference paragraphs 3.1 through 3.12 as if fully set forth.

4.2   Controversy.   A justiciable controversy exists over the rights of the parties under the insurance policies with respect to the claims asserted by SHA in the SHA suit.

4.3   Declaratory Relief.   Absher and Pacific are entitled to declaratory judgment as against the defendants that each of the defendants had a duty to defend and indemnify Absher and Pacific as addition insureds under the insurance policies issued to PTI.

4.4   Bases for Declaratory Relief.   The complaint in the SHA suit stated claims against Absher Pacific that are potentially covered under the insurance policies described in this complaint, but the defendants have wrongfully refused to defend or settle the claims.

4.5   Declaration.   In accordance with 28 U.S.C. § 2201, Absher-Pacific is therefore entitled to a declaration of coverage under the insurance policies issued to PTI.

**THORSRUD CANE & PAULICH**
A PROFESSIONAL SERVICE CORPORATION
1300 PUGET SOUND PLAZA
1325 FOURTH AVENUE
SEATTLE, WA  98101
(206) 386-7755

**B.      Bad-faith Failure to Defend**

4.6      Incorporation.  Plaintiffs Absher and Pacific incorporate by reference paragraphs 3.1 through 4.5 as if fully set forth.

4.7      Duty to defend.  Each of the defendants had a duty under their respective insurance policies to defend Absher and Pacific as additional insureds against the claims in the SHA suit.

4.8      Claims-handling practices.  Each of the defendants unreasonably engaged in unfair claims handling practices in violation of Washington law and insurance regulations by, inter alia, wrongfully and unreasonably refusing to defend Absher Pacific despite the SHA suit's assertion of claims potentially covered under their policies, and failing to conduct a reasonable good-faith investigation as to Absher Pacific's tender.  The defendants wrongfully relied upon assumptions about the timing of the alleged property damage that were not stated within the SHA suit as grounds to deny plaintiffs a defense.

4.9      North Pacific policies.  The North Pacific insurance policies contain language that provides additional-insured coverage to the extent that an "insured contract" required the insured to assume the tort liability of the additional-insured.  The agreement between PTI and Absher-Pacific is an "insured contract" under the terms of the North Pacific insurance policies, and required PTI to assume the tort liability of Absher Pacific.

4.10      Harm.  The defendants' unreasonable denial of defense to Absher Pacific caused injury to Absher Pacific, which was forced to defend against the claims without resources from these insurers.

4.11      Estoppel.  Because of defendants' bad faith, each of the defendants is estopped from asserting coverage defenses and each are liable for the entire cost of defense and settlement.

COMPLAINT - 6
[CV-                    ]
G:\Docs\1\2195\PLD\ABSHER COMPLAINT - NORTH PACIFIC AND ONE
BEACON.docx

**THORSRUD CANE & PAULICH**
A PROFESSIONAL SERVICE CORPORATION

1300 PUGET SOUND PLAZA
1325 FOURTH AVENUE
SEATTLE, WA 98101
(206) 386-7755

**C.     Bad Faith Failure to Settle**

4.12     Incorporation.  Plaintiff Absher Pacific incorporates by reference paragraphs 3.1 through 4.11 as if fully set forth.

4.13     Failure to act in good faith.  Each of the defendants failed to conduct good-faith settlement negotiations, failed to ascertain the most favorable terms available or to evaluate settlement demands, and failed to evaluate settlement offers as though it bore the entire risk, including risk of judgment in excess of policy limits.

4.14     Failure to settle.  Although Absher Pacific invited OneBeacon Insurance and Assurance company to participate in mediation and settlement talks with respect to the SHA suit, One Beacon unreasonably refused on behalf of North Pacific, OneBeacon America and Pennsylvania General to participate in these talks or to contribute to settlement.   Assurance Company unreasonably failed to participate in these talks or to contribute to settlement.

4.15     Estoppel.  Because of the defendants' bad faith, each of the defendants is therefore estopped from asserting coverage defenses and each is liable for the entire amount of the settlement.

**D.     Violation of Washington Consumer Protection Act**

4.16     Incorporation.  Plaintiff Absher Pacific incorporates by reference paragraphs 3.1 through 4.15 as if fully set forth.

4.17     Unfair trade practices.  By the conduct described in this complaint each of the defendants has engaged in unfair trade practices as defined in WAC 284-330.

4.18     Public interest.  These violations are unfair methods of competition and unfair or deceptive acts or practices in the business of insurance, which is a business affecting the public interest.

COMPLAINT - 7
[CV-                    ]
G:\Docs\1\2195\PLD\ABSHER COMPLAINT - NORTH PACIFIC AND ONE
BEACON.docx

**THORSRUD CANE & PAULICH**
A PROFESSIONAL SERVICE CORPORATION

1300 PUGET SOUND PLAZA
1325 FOURTH AVENUE
SEATTLE, WA  98101
(206) 386-7755

4.19   <u>Harm</u>.   These unfair trade practices caused injury to Absher Pacific's business or property.

4.20   <u>Violation</u>.   The defendants have therefore violated the Washington Consumer Protection Act, RCW Chapter 19.86.

4.21   <u>Damages</u>.   The defendants are therefore liable for damages and for treble damages as provided by the Act.

**E.   Violation of Insurance Fair Conduct Act**

4.22   <u>Unreasonable denial</u>.   The defendant insurers' denial of policy benefits to Absher-Pacific was unreasonable and in violation of Washington's Insurance Fair Conduct Act, entitling Absher-Pacific to damages as provided by the Act.

## IV.  Relief Requested

Absher-Pacific requests that the Court grant:

- damages including attorney fees and costs in an amount to be proven at trial,

- treble damages as provided for under the Washington Consumer Protection Act and Insurance Fair Conduct Act,

- costs to plaintiff and such other relief as the Court deems appropriate.

DATED this ___9___ day of November, 2010.

Russell C. Love, WSBA #8941
Lori Nelson Adams, WSBA #9536
THORSRUD CANE & PAULICH
1325 Fourth Avenue, Suite 1300
Seattle, WA  98101
206.386.7755
FAX:  206.386.7795
email:  rlove@tcplaw.com
email:  lnadams@tcplaw.com

Attorneys for Plaintiff Absher Pacific

COMPLAINT - 8
[CV-                    ]
G:\Docs\1\2195\PLD\ABSHER COMPLAINT - NORTH PACIFIC AND ONE
BEACON.docx

**THORSRUD CANE & PAULICH**
A PROFESSIONAL SERVICE CORPORATION
1300 PUGET SOUND PLAZA
1325 FOURTH AVENUE
SEATTLE, WA  98101
(206) 386-7755



**COPY**

RECEIVED
MAR 26 1999
ABSHER-PACIFIC

---

## ABSHER•PACIFIC SUBCONTRACT

---

THIS AGREEMENT is made this **22**nd day of **March**, 1999 by and between **Plumbing Today Inc.**, hereinafter called "Subcontractor" and ABSHER•PACIFIC, hereinafter called "Absher•Pacific."

WITNESSETH that Subcontractor and Absher•Pacific, for the consideration hereinafter named, agree as follows:

**1. THE PROJECT**
Subcontractor shall furnish all material and perform all work as described in Section 2 hereof for:
SEATTLE HOUSING AUTHORITY, 120 - 6TH AVENUE NORTH,
SEATTLE, WASHINGTON 98109-5003
hereinafter called the Owner, on the project commonly called (The Project)
HOLLY PARK REDEVELOPMENT PHASE 1A; HOUSING & LANDSCAPING
at (Location) 32ND AVENUE SOUTH AND SOUTH MYRTLE STREETS, SEATTLE, WASHINGTON
in accordance with the Prime Contract between the Owner and Absher•Pacific dated ____JUNE 19___, 19 _97_. For purposes of this Subcontract, the Prime Contract shall include any and all General, Special and Supplemental Conditions; the Drawings, Specifications and Addenda as prepared by ___WEINSTEIN COPELAND ARCHITECTS_, hereinafter called Architect; any and all amendments, modifications and all other documents forming or by reference made part of the Prime Contract between Absher•Pacific and the Owner. All of the aforementioned documents shall be considered a part of this subcontract by reference thereto and each of them are hereby incorporated into this subcontract as if fully and particularly copied verbatim herein.

**2. SCOPE OF WORK**
The scope of the work to be performed by Subcontractor is as follows:

Provide and Install a complete Plumbing package including both R.I. and trim and a complete Hydronic Heating System for the FOR SALE HOUSING MODEL UNITS. For Sale Housing shall be defined as all work on Block 7, Lots # 2 & # 3. Which include one (1) each of the following building types: 143, and 232. As further clarification Preliminary Plans Dated December 28, 1998 and Building Plans dated February 22, 1999 shall serve to provide further direction. See also attached Bid Proposal dated 3/10/99. All work shall be performed using the same specifications as are being used in the Rental Housing Contract with Absher Construction dated March 13th, 1998. With these exceptions: Use of State Direct Vent HWT's instead of the Woods type water heater and with the addition of an all Gas Appliance Package, which increases the amount of gas piping and necessary hookup. There also will be individual water services to each unit with no sub metering as there was in Rental Housing. Stated pricing shall include all applicable sales & or use tax and shall be as per attached Bid Form. Pricing shall be good through July 1, 1999.

**3. PAYMENT**

(a) Absher•Pacific shall pay Subcontractor for the performance of this work the sum of **$31,523.00  Thirty One Thousand Five Hundred Twenty Three Dollars & 00/00** in current funds, subject to additions and deductions for changes as may be agreed upon, and to make payments on account thereof in accordance with the contract. Payments to be made as the work progresses to the value of certified work completed, retaining **FIVE___** percent (5 %) until 30 days after final acceptance of the Project by Owner or until the release of retainage by Owner for whichever date is later.

(b) Subcontractor shall submit its applications for payment to Absher•Pacific on the form entitled "Subcontractor's Application for Payment" which is enclosed herewith. Said form shall be completed, signed, notarized and submitted to Absher•Pacific by the 20th day of the month to enable Absher•Pacific to make timely application for payment to the owner. Any applications received after this date will not become due or payable until the following months pay period. When required by Absher•Pacific, and as a prerequisite for payment, Subcontractor and its subtier-subcontractors and suppliers of any tier, shall provide partial lien and bond releases, claim waivers and affidavits of payment in a form satisfactory to Absher•Pacific, for the completed portion of Subcontractor's work. At its sole discretion, Absher•Pacific may pay any claim, lien, or any lienable item related to or arising from the performance of Subcontractor's work, or any subtier-subcontractor or supplier of labor, equipment, or materials used in connection with the work directly or by joint check, and deduct such amount from monies owed Subcontractor and charge a reasonable fee for administration of those payments. In the event such payments exceed the amount of this Subcontract, Subcontractor shall repay Absher•Pacific the

Ex. A, pg.9

balance within two (2) weeks of billing and shall pay Absher•Pacific interest on the outstanding amount at a rate of one percent (1%) r month until the outstanding amount is paid in full.

(c) Absher•Pacific shall pay to Subcontractor for applications for payment timely submitted within 10 days of the date payments are received from the Owner, less retention and less any deductions allowed by this subcontract.

(d) Acceptance of final payment to Subcontractor shall constitute a full and final release of all claims arising out of or in connection with this subcontract. For purposes of this agreement final payment shall be the payment by Absher•Pacific to Subcontractor based on Subcontractor's Application for Payment indicating Subcontractor's work is 100% complete. *Interest on retention to be paid to Plumbing Today, Inc. by Absher-Pacific. (only if allowed by Owner) D.O. BC*

(e) Any payments for stored materials may, at Absher•Pacific's sole discretion, be made by joint check based on invoice.

(f) Subcontractor will receive payments from Absher•Pacific only in amounts allowed to Absher•Pacific by Owner on account of Subcontractor's work, and only to the extent of Subcontractor's interest therein, less any deductions or offsets which may otherwise be allowed to be deducted under this Subcontract or by law. In any event, no payment, including payment of retention or other compensation to Subcontractor for work hereunder, shall be due Subcontractor from Absher•Pacific unless and until Absher•Pacific has received such payment from the Owner. Receipt by Absher•Pacific of such payment from the Owner shall constitute and is acknowledged by Subcontractor to be a condition precedent to Absher•Pacific's obligation to pay Subcontractor.

(g) Subcontractor acknowledges that all payments accepted by it, or which are otherwise due under this Subcontract, shall constitute a trust fund in favor of laborers, materialmen, suppliers, government entities, subtier-subcontractors and all other legally entitled to make a claim of lien on the project covered by this Subcontract or entitled to file a claim against any retainage or payment bond. Subcontractor shall pay its own subtier-subcontractors and suppliers all sums owed within ten (10) days of receipt of payment from, or on behalf of, Absher•Pacific.

(h) Progress Payments shall be deemed advances and are subject to adjustments at any time prior to final payment for errors, overpayments, or Absher•Pacific's good faith determination that the remaining balance of payments may be insufficient to insure completion of work covered by the Subcontract or to pay lien, retainage or bond claims.

## 4. SUBMITTALS

Subcontractor shall submit all necessary shop drawings, brochures, printed material, and samples within 30 days of the date of this contract, or as required in a Letter of Intent; and shall notify Absher•Pacific of any special scheduling requirements within 2 weeks of the date of this contract.

PER CONTRACT DOCUMENTS

## 5. INCORPORATION OF OTHER DOCUMENTS

The contract documents which are binding on the subcontractor are set forth in.Paragraph 1, and include the General Conditions, Supplement Conditions, Special Conditions, Drawings, Specifications, Addenda, Amendments, Modifications and all other documents forming or by reference made part of the Prime Contract between Absher•Pacific and the Owner. All of the aforementioned documents shall be considered a part of this subcontract by reference thereto and each of them are hereby incorporated into this subcontract as if fully and particularly copied verbatim herein. Subcontractor acknowledges that it is familiar with the terms and conditions of the Prime Contract, that is has fully reviewed the Site, Drawings, Specifications and Addenda; and is hereby bound to Absher•Pacific by the terms of the Prime Contract, the General Conditions, Special Conditions, Supplemental Conditions, Drawings, Specifications and Schedule. All rights and remedies reserved to the Owner under the Prime Contract shall apply to and be possessed by Absher•Pacific, as well as the Owner in all dealings with the subcontractor. Subcontractor is bound to all clauses of the Prime Contract, including but not limited to those relating to changes, differing site conditions, variation in quantities, extra work, default termination, disputes, written notice requirements and schedules. Subcontractor shall give Absher•Pacific written notice of any claim or request for equitable adjustment so Absher•Pacific may comply with the notice requirements of the Prime Contract. Subcontractor shall be bound by all notice requirements of this Subcontract and the Prime Contract. Failure by the Subcontractor to provide timely notice shall result in a n absolute waiver of said claim or request for equitable adjustment.

## SCHEDULE

(a) Time is of the essence in this subcontract. Subcontractor agrees to punctually and diligently perform all parts of the Subcontract in accordance with Absher•Pacific's construction schedule. Subcontractor shall keep thoroughly informed as to the progress of the

Project, so as to prepare its workforce to meet the construction schedule.  Upon notice by Absher●Pacific's that in Absher●Pacific's union Subcontractor has fallen behind in its work, Subcontractor shall take such steps as may be necessary to improve and/or ...crease equipment, crews and/or tools being used, and to submit for approval such supplementary Subcontractor's schedule(s) as may be necessary to demonstrate the manner in which Subcontractor's rate of progress will be redeemed to meet the construction schedule. *Schedule to provide Plumbing Today, INK. a reasonable time to perform its work.* *fk DKDrO.*

(b) Any float-time between the end of the final construction activity and the final completion date shall belong to Absher●Pacific exclusively and may be used by Absher●Pacific in determining if additional Subcontract days are to be awarded for changes in the Subcontract or for delays to the Subcontractor caused by Absher●Pacific.  The Subcontractor will not be entitled to any adjustment in the Subcontract time, the construction schedule or the Subcontract price or to any additional payment from any source by reason of Absher●Pacific's use of float-time between the end of the final construction activity and the final completion date.

(c) Other suppliers, subcontractors or subtier-subcontractors may be working on the Project in the same area during Subcontractor's performance of the work, and such concurrent activities may interfere with Subcontractor's work.  Coordination of work activities shall be the responsibility of Subcontractor with the ultimate resolution and discretion concerning such conflicts, or coordination, remaining with Absher●Pacific.  Subcontractor is required to avoid interference.  Avoidance of interference includes coordination of the work sequences relative to Subcontractor's work and that of other subcontractors, subtier-subcontractors and suppliers and Absher●Pacific.  Absher●Pacific will make final determinations as to sequence and location in the event of conflict.  Subcontractor shall fully cooperate with such other subcontractors, subtier-subcontractors and suppliers to avoid any delay or hindrance of the Project.  Absher●Pacific is not responsible for any interference's resulting from acts, omissions, or operations of subcontractors, subtier-subcontractors or suppliers.

(d) Absher●Pacific may, from time to time, modify or alter the construction schedule, but, in such an event, no such modification or alteration shall entitle Subcontractor to any increase in the consideration of the subcontract, unless within five working days after Subcontractor receives notice of the modification or alteration, it provides written notification to Absher●Pacific that the modification or alteration will result in additional costs to the subcontractor.

## 7. CLAIMS

(a) In case of a dispute between Subcontractor and Absher●Pacific for or on account of acts and/or omissions of the Owner or the Owner's Engineer/Architect or Agent; Absher●Pacific agrees to present to the Owner, in Absher●Pacific's name, all of Subcontractor's claims for equitable adjustment or time extension and to invoke, if necessary, any dispute resolution procedure of the Prime Contract.  Absher●Pacific's decision shall be final as to whether any claims of the Subcontractor are on account of acts and/or omissions of the Owner or Owner's Engineer/Architect or Agent.  Subcontractor shall have full responsibility for presentation of any request for equitable adjustment or time extension and shall bear all costs thereof, including attorney's fees.  Subcontractor agrees to stay and suspend any legal action against Absher●Pacific, including an action claiming that the dispute does not entail an act or omission of the Owner or Owner's Engineer/Architect or Agent, until the action against the Owner has been fully exhausted, including any appeals.  Subcontractor shall not be entitled to receive a greater amount from Absher●Pacific than Absher●Pacific receives from the Owner less appropriate General Contractor markups and Subcontractor agrees that it will accept such amount as full satisfaction and discharge of any claim subcontractor may have against Absher●Pacific by reason of said dispute.  It is understood that the only fund from which claims for changes or extra work required by the Owner is paid shall be created by the Owner's payment to Absher●Pacific.  Subcontractor shall proceed with the work pending final resolution of the dispute or any dispute arising out of this Subcontract.

(b) In the event of a delay in the performance of Subcontractor's work for any cause whatsoever, Subcontractor shall give written notice upon Absher●Pacific of such delay within five working days after the occurrence of the event which caused the delay; or if the Prime Contract provides for a shorter period, within sufficient time to allow Absher●Pacific to give timely notice to the Owner.  Absher●Pacific or its agents do not waive the requirement of timely written notice unless such waiver is in writing.  No claim of the Subcontractor, including those for additional costs or additional time shall be valid, unless the time lines herein have been met.  Failure to provide complete, written notification shall be an absolute waiver of any claims arising in any way from , or caused by, such delay.  However, no extension of time shall be allowed to Subcontractor for delay by Subcontractor in preparing shop drawings or in securing approval by the architect or engineer when such drawings are not properly prepared or when Subcontractor, exercising reasonable diligence and judgement, could have anticipated and avoided the delay.

(c) Absher●Pacific and Subcontractor shall not be liable to one another for any delays arising out of acts of God, embargoes or other causes beyond their control; provided, that if the Owner should access actual or liquidated damages or penalties against Contractor, the subcontractor shall be responsible for such portion of the assessment as may be directly attributable to it, regardless of the cause of delay.

Page 3 of 7

(d) In the event any error, inconsistency or ambiguity in the plans and/or specifications, or any instruction, direction or clarification by the owner, architect or Absher•Pacific results in additional cost to Subcontractor, Subcontractor shall give written notice of a claim for additional compensation within ten working days of the date of such instruction, direction or clarification; or, if the Prime Contract provides for a shorter period, within sufficient time to allow Absher•Pacific to give timely notice to the Owner.  In the event Subcontractor fails to give the notice required by this section, it shall be deemed to have forever waived its right to additional compensation arising from event.

(e) Any damage to Subcontractor's work by another subcontractor, subtier-subcontractor or supplier shall be repaired by Subcontractor and billed by Subcontractor to Absher•Pacific to be passed on to the Subcontractor, Subtier-subcontractor or supplier responsible therefore. Subcontractor will give written notice to Absher•Pacific and to the party responsible for the damage before making repairs. If any dispute arises between Subcontractor and another subcontractor as to which is responsible for any item of damage, or the amount of the damage, the dispute shall be submitted to Absher•Pacific for decision and Absher•Pacific's determination as to responsibility shall be final and binding on Subcontractor.  Nothing in this paragraph shall be construed as a waiver of any right Subcontractor may have against another subcontractor for damage for making repairs hereunder.

## 8. TERMINATION PROVISIONS

(a) Within ~~three~~ calendar days of notice by Absher•Pacific, Subcontractor will be upon the job site with sufficient crew and materials and commence work as required; provided, ~~that if Subcontractor fails to so commence work or continue work as schedule, Absher•Pacific shall have the option to terminate this subcontractor and to complete the work and the Subcontractor shall pay to Absher•Pacific 1% of the total subcontract price per day, not as a penalty, but as liquidated damages for the delay; provided further,~~ that if Subcontractor fails to so commence work or continue work as scheduled, Absher•Pacific shall have the option to terminate this subcontract and to complete the work and the Subcontractor shall pay to Absher•Pacific the cost of any actual or consequential damages resulting from the termination.  This paragraph shall apply to the entire course of the work including completion items after inspection.

(b) Within ~~three~~ calendar days of notice by Absher•Pacific to the Subcontractor that the Owner, Architect, and/or Absher•Pacific question the Subcontractor's ability to perform under the terms of this contract, the Subcontractor will present to Absher•Pacific evidence of its ability to so perform; provided, that if the Subcontractor fails to submit the requested evidence, or fails to reasonably satisfy Absher•Pacific, the Owner and/or Architect of its ability to perform under the terms of this contract, Absher•Pacific shall have the option to terminate this contract and to complete the work and the Subcontractor shall pay to Absher•Pacific the cost of any actual and consequential damages resulting from the termination.

(c) If Subcontractor shall file for protection under the U.S. Bankruptcy Code, or make a general assignment for the benefit of creditors, or if a receiver should be appointed to account for its insolvency, Absher•Pacific may, without prejudice to any other right or remedy, terminate this subcontract and take possession of all materials, tools, equipment and appliances thereon and finish the work by whatever method deemed expedient. In such case Subcontractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the contract price shall exceed the expense of finishing the work, including compensation for additional architectural, managerial and administrative services, such excess shall be paid to Subcontractor. If such expense shall exceed the unpaid balance, Subcontractor shall pay the difference to Absher•Pacific within two weeks of billing.

(d) At its sole option, Absher•Pacific may, without cause, at any time, terminate this subcontract in whole or in part by written notice to Subcontractor. In the event of such termination, Subcontractor may claim its reasonable direct costs incurred prior to the effective date of termination plus a reasonable allowance for profit on those direct costs, less any deductions, offsets and/or backcharges allowed by this subcontract; and will not be entitled to any other costs, damages or profit, provided however, the total sum payable on termination shall not exceed the subcontract price reduced by the payments previously made.

(e) The rights and remedies of Absher•Pacific provided under this provision of the Subcontract are in addition to any other rights and remedies provided by law or otherwise. In the event Absher•Pacific terminates all or any portion of Subcontractor's work pursuant to this provision of the Subcontract, and it is determined that the termination was not appropriate, such termination shall be deemed an optional termination under paragraph 8(d) of this Subcontract, to which the provisions of paragraph 8(d) shall apply.

## 9. INDEMNIFICATION PROVISIONS

(a) Subcontractor shall defend, indemnify and hold harmless Absher•Pacific from and against any and all suits, claims, actions, losses, costs, penalties, and damages, of whatsoever kind or nature, including attorney's fees, arising out of, in connection with, or incident to the Subcontractor's performance of this subcontract, or the performance of its subtier-subcontractors. A mutually negotiated Indemnification Addendum is attached hereto and marked as "Attachment A," and incorporated as fully as if set forth herein.

Page 4 of 7

(b) In the event Subcontractor contracts with subtier-subcontractors to perform all or a portion of its work, Subcontractor shall submit Absher•Pacific a signed copy of "Attachment B", entitled "Subtier-Subcontractor Indemnity" and Certificates of Insurance from ...ch of its subtier-subcontractors, in compliance with the requirements of paragraph 10(a).

## 10. INSURANCE AND BOND

(a) Subcontractor shall carry, at its own expense, minimum general liability limits, comprehensive form, as required in the specifications, or $2,000,000/$2,000,000 General Aggregate; $1,000,000/$1,000,000 Each Occurrence; $1,000,000/$1,000,000 Bodily Injury; and $1,000,000/$1,000,000 Property Damage annual aggregate, per location, whichever is greater. Subcontractor shall submit to Absher•Pacific a Certificate of Insurance (i) naming Absher•Pacific and the Owner as additional Insureds without limitation, qualification or reservation, (ii) endorsed to be primary and non-contributory with any insurance maintained by Absher•Pacific; (iii) containing a waiver of rights of subrogation against Absher•Pacific and the Owner, and (iv) containing a Severability of Interest provision in favor of Absher•Pacific and the Owner.

(b) Subcontractor waives any claim against Absher•Pacific, Owner, and their respective agents and/or representatives which are covered by any valid insurance of any kind, whether or not such insurance is subject to a deductible, and regardless of whether the claim results from the exclusive or concurrent fault to Absher•Pacific and/or Owner or their agents/representatives. In case of deductibles asserted in whole or in part against Absher•Pacific or Owner, Subcontractor agrees to satisfy same as to all losses caused by, resulting from, incident to, connected with or arising out of Subcontractor's performance of this Contract. Subcontractor's obligations under this section apply whether or not Subcontractor had knowledge of the amount or applicability of any deductible. It is the Subcontractor's responsibility to inquire of any knowledgeable party as to the deductible amount and the circumstances under which it would be assessed.

(c) If requested by Absher•Pacific, Subcontractor shall furnish a surety bond or bonds in form and amount of all the terms and conditions hereof (including without limitation, the payment or repayment to Absher•Pacific of any amounts which Subcontractor is obligated to pay or repay) and guaranteeing that Subcontractor shall pay promptly and fully all charges or costs incurred by it in connection with the work. No change, alteration, or modification in or deviation from this Subcontract, its terms, conditions, plans or specifications, or in the manner, time or amount of payment as provided herein, whether or not made in the manner as herein provided, ...hall release or exonerate, in whole or in part, any surety or any bond given in connection with this subcontract. The requirement for ...urety bond is a material condition of this subcontract. Failure to provide such bond upon request is a material breach of this agreement and justification for determination of default. The cost of the bond, if required, will be paid by Absher•Pacific,unless it was included in Subcontractor's bid.

## 11. SAFETY

(a) Subcontractor and its subtier-subcontractors shall take all reasonable necessary safety precautions pertaining to its (their) work and work performance, and is required to comply with RCW49.17 and any other applicable laws, ordinances, regulations and orders issued by public authority, whether Federal, State, local, OSHA, WISHA, or other, and any safety measure requested by Absher•Pacific. Subcontractor shall at all times be responsible for providing a safe job site and shall be responsible for the work performance and safety of all employees, personnel, equipment and materials within Subcontractor's or its subtier-subcontractors' care, custody or control. Subcontractor and its subtier-subcontractors shall furnish all required safety equipment for its (their) work and insure all of its (their) employees have and wear personal protective equipment in compliance with applicable OSHA/WISHA requirements and Absher•Pacific's safety rules. Subcontractor shall promptly provide Absher•Pacific with written notice of any safety hazards or violations found on the job site, and any injury which occurs on the job site.

(b) Subcontractor certifies that it and its subtier-subcontractors are registered contractors and maintain a written Accident Prevention Plan and a job site specific safety plan in compliance with applicable OSHA/WISHA regulations. Subcontractor's Accident Prevention Plan must address Subcontractor's role and responsibilities pertaining to safety on the job site, training and corrective action and be tailored to safety and health requirements for the work involved. Subcontractor shall have and enforce any disciplinary action schedule in the event any safety violations are discovered, which schedule should vary depending upon the severity of the violations. When requested by Absher•Pacific, Subcontractor shall provide information regarding any and all safety measure to Absher•Pacific.

(c) Absher•Pacific may, at its sole discretion, direct Subcontractor to remove employees not in compliance with the above. In the event Subcontractor does not promptly correct any safety violations, Absher•Pacific may order Subcontractor to stop work until the violation is corrected, and may correct the violation and charge all costs of compliance to Subcontractor.

(d) Subcontractor agrees to defend, indemnify and hold Absher•Pacific harmless from all OSHA and/or WISHA claims, demands, proceedings, violations, penalties, assessments or fines that arise out of or are related to Subcontractor's failure to comply with any

safety-related laws, ordinances, rules, regulations, orders, or obligations hereunder. Absher•Pacific may charge against the sums otherwise owing Subcontractor the amount of the fines, fees, costs, and expenses incurred by Absher•Pacific due to claims, citations, fines assessed Subcontractor or its subtier-subcontractors.

(e) Subcontractor assumes the same responsibility for safety in common work areas that Absher•Pacific assumes in its contract with the owner.

(f) Subcontractor's on-site employees shall attend the weekly safety meetings conducted by Absher•Pacific or conduct its own weekly safety meeting.

## 12. CHANGES

(a) This Subcontract may be amended to provide for additions, deletions, and revisions in the Subcontract work or to modify the terms and conditions thereof. Any claim for increase or decrease in the Subcontract price or time shall be based on written notice stating the nature of the claim delivered by the Subcontractor to Absher•Pacific promptly, but in no event later than five (5) days after occurrence of the event giving rise to the claim, or within the time limits specified in the Prime Contract, whichever is shorter. Notice of the amount of the claim and supporting data shall be delivered to Absher•Pacific within twenty (20) days of such occurrence or within the time limits specified n the Prime Contract, whichever is shorter. No claim for adjustment in the subcontract price will be valid if not submitted in strict accordance with this paragraph.

(b) Payment for changed work or granting of a time extension, as provided herein, shall be full compensation for any change or extra work, including payment for costs of all delays in connection with such change and including full payment for any expense for inconvenience, disruption of schedule, loss of efficiency or productivity of any nature whatsoever by Subcontractor or subtier-subcontractors, Suppliers or Materialmen, *unless cost proposal or change order state otherwise.*  *DL/PO.*  *BL*

(c) No change in the work, extra work, alterations, additions or deductions from the work shall be made without prior written direction from Absher•Pacific, except in an emergency endangering life or property. No claim for addition to the Subcontract sum, or time, shall be valid unless ordered in writing.

(d) If Subcontractor claims that any direction, instruction, interpretation, or determination of the drawings or specifications or otherwise involve extra costs under this Subcontract, Subcontractor shall give Absher•Pacific written notice thereof within five (5) days of such instruction or direction, and in any event before proceeding to execute the extra work, except in an emergency endangering life or property. No claim shall be valid unless it is submitted in strict accordance with the Subcontract.

(e) If Subcontractor encounters any unforeseen conditions which impact the cost or schedule of the work, Subcontractor shall provide written notice thereof to Absher•Pacific within 24 hours of the discovery. In the event he discovered unforeseen conditions present a potential safety or health hazard, Subcontractor shall immediately suspend work in that area and notify Absher•Pacific. In no event shall the subcontractor proceed with any extra or remedial work without prior written direction from Absher•Pacific, except in an emergency endangering life or property. No claim for additional compensation or time as the result of unforeseen conditions shall be valid unless it is submitted in strict accordance with this subcontract.  *DL/PO*  *BL*

## 13. MISCELLANEOUS PROVISIONS

(a) Subcontractor shall clean up as work progresses and clean up within one working day of a request by Absher•Pacific. If Subcontractor fails to clean up within that time limit, Absher•Pacific is authorized to proceed with such clean up and deduct a reasonable clean up charge from Subcontractor's contract balance. *24 hour written notice must be given to the main office of Plumbing Today, IX. prior to Absher-Pacific proceeding above.*

(b) Subcontractor warrants that it has the status of an employer as defined by the Unemployment Compensation Act of the State, and all similar acts of the United States government, including all Social Security Acts; that it will withhold from its payrolls the necessary Social Security and Unemployment reserves, and pay the same; that Absher•Pacific shall in no way be liable as an employer to or on account of any of the employees of Subcontractor; that Subcontractor will, to the extent of any of its employees under this subcontract, conform to all rules and regulations of Social Security acts and Unemployment Commissions created by said laws, and that it will furnish satisfactory evidence to Absher•Pacific that it is conforming to said laws, rules and regulations. Subcontractor hereby releases and indemnifies Absher•Pacific from any and all liability arising from violations by Subcontractor under said laws.

(c) Subcontractor shall pay any and all federal, state, county and municipal taxes and licenses including sales taxes, if any, for which the Subcontractor may be liable in connection with the labor and materials herein, or in carrying out the Subcontract, prior to final payment being made to it.

(d) Subcontractor shall pay industrial insurance and all other payments required under Workman's Compensation laws as the same come due, and to furnish Absher•Pacific with evidence that the same has been paid before final payment is made on this subcontract.

(e) Subcontractor shall comply with, observe and be bound by all terms and provisions of any collective bargaining agreements executed by Absher•Pacific or on Absher•Pacific's behalf, at its own expense, as long as they do not conflict with Plumbing Today, Inc. labor management agreements. BK ✗H/DD

(f) During the performance of this contract, Subcontractor shall abide by and comply with the provisions prescribed for contracts by Executive Order 11,246, regarding equal employment and all other employment laws of the State or Federal Government.

(g) Subcontractor shall submit to Absher•Pacific a written list of the subtier-subcontractors and suppliers it intends to use on the project.

(h) Subcontractor shall not, in whole or in part, assign or sublet this subcontract, or the proceeds thereof without the written consent of Absher•Pacific.

(i) Subcontractor agrees to incorporate this Subcontract and the Prime Contract into any contract it enters into with any subtier-subcontractors or suppliers.

(j) This agreement contains the entire understanding between the parties, and supersedes any prior understandings, written and/or oral, representing the same subject matter. There are no representations, agreements, arrangements or understandings, oral or written, between or among the parties hereto relating to the subject matter of this agreement, which are not fully expressed herein. Any modifications or amendment of this agreement shall be in writing and signed by the parties hereto.

(k) The headings of the Sections of this Agreement have been inserted for convenience of reference only and shall in no way restrict or otherwise modify the terms of this subcontract.
(l) Any and all items of importance will be to the main office of Plumbing Today, Inc. ✗H/DD BK
(m) Absher-Pacific to provide power and sanitary facilities.

AGREEMENT BETWEEN:

Plumbing Today, Inc.
(Subcontractor)

By: Barbara Kender

Title: President

Address: 17624 15th Ave SE #101

Bothell WA 98012

Phone: (425) 481-1837

Fax: (425) 483-5578

License # PLUMBTI161BF

ABSHER - PACIFIC JOINT VENTURE
(General Contractor / Construction Manager)

By: William F. Clinton

Title:      Construction Manager

Address:   3027 South Morgan

Seattle, Washington 98108

Phone:      (206) 725-4311

Fax:        (206) 760-8995

License # CCO1-ABSCHEC-345PS

Ex. A, pg.15

## INDEMNIFICATION ADDENDUM

_____ (hereinafter called "Subcontractor") agrees to defend, indemnify and hold Absher•Pacific (hereinafter called "Contractor") harmless from any and all claims, demands, losses and liabilities to or by third parties arising from, resulting from or connected with services performed or to be performed under this subcontract by Subcontractor or Subcontractor's agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

Subcontractor's duty to indemnify Contractor shall not apply to liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of Contractor or Contractor's agent or employees.

Subcontractor's duty to indemnify Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the concurrent negligence of (a) Contractor or Contractor's agents or employees, and (b) Subcontractor or Subcontractor's agents or employees, shall apply only to the extent of negligence of Subcontractor of Subcontractor's agents or employees.

Subcontractor specifically and expressly waives any immunity that may be granted it under the Washington State Industrial Insurance Act, Title 51 RCW.  Further, the indemnification obligation under this Subcontract shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable to or for any third party under workers' compensation acts, disability benefits acts, or other employee benefits acts

Subcontractor's duty to defend, indemnify and hold Contractor harmless shall include, as to all claims, demands, losses and liability to which it applies, Contractor's personnel-related costs, reasonable attorneys' fees, court costs and all other claim-related expenses.

Provided Subcontractor's waiver of immunity by the provisions of this paragraph extends only to claims against Subcontractor by Contractor, and does not include, or extend to, any claims by Subcontractor's employees directly against Subcontractor.

THE UNDERSIGNED HEREBY CERTIFY THAT THIS ADDENDUM WAS MUTUALLY NEGOTIATED.

Dated _March 25, 1999_                        Dated: _____

Company: _Plumbing Today, Inc._               ABSHER•PACIFIC JOINT VENTURE

By: _Barbara Kendon_                          By: _____

Title: _President_                            Gregory A. Helle
                                              Vice President

1/6/2009 11:42          Bratrud Middlton Insurance        Douglas Velez→Claims          06/12

FILED

08 NOV 26 PM 4: 26

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

*Dept 37*

SUPERIOR COURT OF WASHINGTON IN AND FOR KING COUNTY

SEATTLE HOUSING AUTHORITY,

               Plaintiff,

    v.

ABSHER CONSTRUCTION COMPANY; a
Washington corporation; PACIFIC
COMPONENTS, INC., a Washington
corporation;

               Defendants.

No. 08 2 - 41044 - 7 SEA

SEATTLE HOUSING AUTHORITY'S
COMPLAINT FOR:

1. BREACH OF DUTY TO DEFEND
   AND INDEMNIFY;
2. BREACH OF CONTRACT AND
   WARRANTY; AND
3. NEGLIGENCE

COMES NOW Plaintiff Seattle Housing Authority ("SHA") by and through its attorneys of record, Foster Pepper PLLC, and hereby presents the following claims:

## I.  PARTIES

1.1    SHA at present, and at all times pertinent to this lawsuit, is a municipal corporation organized and existing under the laws of the state of Washington, and owner of the Holly Park Redevelopment Project ("NewHolly") located in southeast Seattle, Washington.

1.2    Absher-Pacific is a Joint Venture Agreement entered into by Absher Construction Company, an active Washington corporation ("Absher"), and Pacific Components, Inc., an active Washington corporation ("Pacific") for the purpose of pursuing and performing the construction of NewHolly.

1.3    Absher at present, and at all times pertinent to this lawsuit, is a Washington corporation organized and existing under the laws of the state of Washington.

SEATTLE HOUSING AUTHORITY'S COMPLAINT - 1

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50552407.7

ORIGINAL

1/6/2009 11:42          Bratrud Middlton Insurance          Douglas Velez→Claims          07/12

1.4     Pacific at present, and at all times pertinent to this lawsuit, is a Washington Corporation organized and existing under the laws of the state of Washington.

1.5     Under the Joint Venture Agreement, each venturer agreed to assume liability and responsibility for its actions, and the actions of its agents and employees.[1] Absher, Absher-Pacific, and Pacific are collectively referred to as Absher-Pacific.

## II.     JURISDICTION AND VENUE

2.1     NewHolly is bounded generally by S. Morgan Street and S. Holly Street on the north, 28th Avenue S. and Holly Park Drive on the west, S. Myrtle Place and S. Holden Street to the south, and Martin Luther King Jr. Way and 37th Avenue South to the east in Seattle, Washington.

2.2     Absher-Pacific was the general contractor of Phase I of NewHolly. Venue and jurisdiction are proper in King County, Washington.

## III.     BACKGROUND

3.1     Holly Park was a low-income, multi-family, residential community with approximately 890 existing residential units.

3.2     In 1997, SHA created a plan to redevelop Holly Park in three Phases into a 1200-unit mixed income community of single family homes, duplexes and townhomes, along with approximately 49,000 square feet of community facilities for education, social services and community service organizations, as well as management offices and maintenance facilities.

Absher-Pacific Agreement

3.3     On June 19, 1997, SHA entered into an agreement (the "Agreement") with Absher-Pacific to be General Contractor and Construction Manager ("GC/CM") of Phase 1 of NewHolly.

3.4     In accordance with the contract, Absher-Pacific agreed to:

---

[1] Joint Venture Agreement ¶5.2.

SEATTLE HOUSING AUTHORITY'S COMPLAINT - 2

FOSTER PEPPER PLLC.
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51601077

a.   Review the Schematic Design, analyzing it for opportunities to revise
     element or approach;[2]

b.   Review and analyze the Schematic Design for any impediments to efficient and
     timely construction of the work;[3]

c.   Participate in major meetings of the Design Team;[4]

d.   Select subcontractors, and/or self-perform work;[5]

e.   Manage, direct and coordinate the efforts of the subcontractors and
     suppliers;[6]

f.   Provide work and material which conform to the Contract Documents (any
     work that does not conform is considered defective).[7]

g.   Be bound by all the ordinances of Seattle, and by all other federal, state,
     and local laws.

h.   Name SHA as an additional insured with respect to liability arising out of work
     performed by or on behalf of Absher-Pacific and ensure the underlying policy
     would have products and completed operations coverage maintained for two years
     after project acceptance.[8]

i.   Defend, indemnify and hold harmless SHA for any and all claims, demands,
     losses, and liabilities to or by third parties arising from, resulting from, or
     connected with work performed or to be performed under the Agreement by
     Absher-Pacific, its agents, employees, and Subcontractors, and suppliers of any
     tier and their respective employees, even though such claims may be proven to be

---

[2] Absher-Pacific Contract §E.2 -5; §F(f).
[3] Id.
[4] Id.
[5] Absher-Pacific Contract §F(f).
[6] Absher-Pacific Contract § G(1).
[7] Absher-Pacific Contract § K(f).
[8] Absher-Pacific Contract § X(4).

SEATTLE HOUSING AUTHORITY'S COMPLAINT - 3

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50848897 7

1  false, groundless, or fraudulent, to the fullest extent permitted by law and subject

2  to certain limitations; and [9]

3      j.    Warrant its work was free of any defect in equipment, material, design or

4  workmanship.[10]

5      3.5    Absher-Pacific coordinated, scheduled, and completed the construction of all of

6  Phase 1 of NewHolly.

7      3.6    Upon information and belief, Absher-Pacific never named SHA as an additional

8  insured on its insurance policy and failed to obtain the agreed upon coverage.

9  **IPEX Products**

10      3.7    During the construction of NewHolly, either Absher-Pacific or its subcontractors

11  (for whom Absher-Pacific is liable) selected and installed IPEX, Inc. tubing, brass fittings, and

12  other IPEX supplies/materials in the buildings' hydronic heating system.

13  **The Defects and Damages**

14      3.8    After NewHolly's completion, in many of the constructed buildings the hydronic

15  heating systems began to prematurely fail. These failures were due to tubing leaks, lack of space

16  heating capacity, lack of domestic hot water, hot water tank drain valve leaks, hot water tank and

17  temperature valve leaks, mixing valve leaks, excessive heat, and the failure of other component

18  parts. The defects were latent.

19      3.9    A suspected cause of the hydronic heating systems failures is the IPEX tubing

20  used by Absher-Pacific. The tubing is a component part of the systems and prematurely failed,

21  in part, due to brittle cracking.

22      3.10    Defective submittals, installation and construction by Absher-Pacific and its

23  subcontractors also caused the hydronic systems to fail. For instance, the heating system

24

25      [9] Absher-Pacific Contract § X(11).

26      [10] Absher-Pacific Contract § L(1).

SEATTLE HOUSING AUTHORITY'S COMPLAINT - 4

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4483  FAX (206) 447-9700

50169007.7

✄ 1/6/2009 11:42          Bratrud Middlton Insurance          Douglas Velez →Claims          10/12

1  capacity on many residential units is undersized, compression fittings connecting the PBX-

2  Aluminum-PEX tubing to brass fittings allow direct contact of the aluminum layer to the brass

3  fitting, and there is evidence water heaters were not installed with adequate seismic strapping.

4    3.11    Another problem was the IPEX brass fittings prematurely eroded, leaving eroded

5  metal in the hydronic system.  SHA replaced brass fittings in many hydronic systems at its own

6  expense and at a considerable cost.

7    3.12    On March 25, 2008, the NewHolly Homeowners Association (the "Association")

8  filed a lawsuit alleging SHA is liable for latent construction defects at NewHolly (including

9  those related to the hydronic heating system).  Absher-Pacific performed the allegedly defective

10  work, and installed the allegedly defective components.

11    IV.    FIRST CAUSE OF ACTION:

12    BREACH OF DUTY TO DEFEND AND INDEMNIFY

13    4.1    Absher-Pacific agreed to defend SHA from all claims arising from, resulting

14  from, or connected with its work.  SHA hereby tenders its defense to Absher-Pacific.  To the

15  extent Absher-Pacific fails to accept that tender, Absher-Pacific is in breach of its duty to defend.

16  As a result of this breach, SHA suffers damages to be proven at trial, including attorney's fees,

17  expert fees, and costs incurred defending the Association's claims and enforcing its rights under

18  the Agreement.

19    4.2    Absher-Pacific agreed to indemnify SHA from all claims arising from, resulting

20  from, or connected with its work.  To the extent SHA is held liable to the Association for

21  damages, attorney's fees, and other cost resulting from construction defects at NewHolly,

22  Absher-Pacific is liable to SHA .  Absher-Pacific is further liable for the attorney's fees, expert

23  fees, and all SHA costs incurred defending the Association's claims and enforcing its rights

24  under the Agreement.

25

26

SEATTLE HOUSING AUTHORITY'S COMPLAINT - 5

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

3080807.7

## V.    SECOND CAUSE OF ACTION:

### BREACH OF CONTRACT AND EXPRESS WARRANTY

5.1    Absher-Pacific breached its contact and respective warranties (both expressed and implied by law) by failing to perform its work in conformance with the terms of the Agreement, by supplying and installing defective components, and failing to procure the agreed upon insurance.

5.2    For each of these breaches, SHA has suffered damages including the costs of repair, the cost of temporarily relocating unit owners and their furniture, loss of use, rental fee loss, reimbursement of excessive utility payments, excessive maintenance costs, and defense costs. Those damages will be proven at trial.

## VI.    THIRD CAUSE OF ACTION: NEGLIGENCE

6.1    By agreeing to provide SHA with certain construction services in connection with the construction of NewHolly, Absher-Pacific was obligated to exercise ordinary and reasonable care and skill in providing those services to plaintiff.

6.2    Absher-Pacific negligently failed to provide proper and appropriate submittals, failed to supervise its subcontractors and failed to interpret and follow the plans and specifications of NewHolly in a reasonable manner, in breach of its duty to exercise ordinary and reasonable care and skill in providing services to SHA.

6.3    As a direct and proximate result of Absher-Pacific's negligence, property damage has occurred at New Holly.

6.4    As described above, SHA has suffered damages as a result of Absher-Pacific's negligence. These damages will be proven at trial.

## VII.    PRAYER FOR RELIEF

SHA prays for the following relief:

1.    To the extent Absher-Pacific is liable under any theory of liability, its venturers, Absher and Pacific, are jointly and severally liable;

SEATTLE HOUSING AUTHORITY'S COMPLAINT - 6

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51450627.7

1    2.    For money damages in an amount to be proven at the time of trial against Absher-

2    Pacific.

3    3.    For any prejudgment interest permitted under the law;

4    4.    For any reasonable attorneys' fees permitted under the law;

5    5.    For costs of suit herein; and

6    6.    For such other and further relief as the court may deem just and equitable.

7    SHA reserves the right to make further claims as may be warranted by additional

8    discovery.

9    DATED this *26th* day of November, 2008.

10

11                        FOSTER PEPPER PLLC

12

13                        Edward R. Coulson, WSBA No. 14014
                          Colm P. Nelson, WSBA No. 36735
14                        Attorneys for Plaintiff
                          Seattle Housing Authority
15

16

17

18

19

20

21

22

23

24

25

26

SEATTLE HOUSING AUTHORITY'S COMPLAINT - 7

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

51863507.7

Ex. B, pg.23



**OneBeacon**
I N S U R A N C E

Specialty Claims Unit
505 North Brand Blvd
Suite 1500
Glendale, CA  91203
(818) 539-2620
(818) 539-2625 (Fax)
rjoyce@onebeacon.com

May 13, 2009

Jonathan Dirk Holt
Scheer & Zehnder
701 Pike Street
Suite 2200
Seattle, WA. 98101



RE:  <u>Seattle Housing Authority v. Absher Construction Co. and Pacific Components, Inc.</u>
Our Insured:     Plumbing Today, Inc.
Our Claim No.:   0AA586991
Your Client:     Absher-Pacific
Your File:       18.206

Dear Mr. Holt,

OneBeacon Insurance Company, as administrator of select North Pacific Insurance Company policies, Pennsylvania General Insurance Company and OneBeacon America Insurance Company (collectively hereafter referred to as "OneBeacon") have completed their investigations into your request that Absher-Pacific be provided a defense and indemnity under the policies issued to Plumbing Today, Inc. (PTI).  Please be advised that OneBeacon has concluded that there is no defense or indemnity owed to Absher-Pacific under the OneBeacon policies.

Your client seeks a defense and indemnity in regards to a construction defect lawsuit that was filed in King County Washington.  The lawsuit was filed by the Seattle Housing Authority (SHA).  The SHA alleges hydronic heating systems installed in an 890 unit residential complex known as Holly Park have begun to fail prematurely.  PTI was contracted by Absher-Pacific on 3-22-1999 to install plumbing, including the hydronic heating systems in the model homes.

The following OneBeacon policies were issued to PTI:

| Issuing Company | Policy Number | Policy Period |
|---|---|---|
| North Pacific Ins. Co. | C01-147974 | 7-29-1999/2000 |
| North Pacific Ins. Co. | C02-147974 | 7-29-2000/2001 |
| Pennsylvania General | OOR808958 | 7-29-2001/2002 |
| OneBeacon America | COR808958 | 7-29-2002/2003 |

Ex. C, pg.24

Jonathan Dirk Holt
Scheer & Zehnder
5/13/2009
Page 2

Each of these policies contains a $2,000,000 aggregate and a $1,000,000 per occurrence limit. The policies have the CG0001 01-96 commercial general liability coverage form. Both the North Pacific policies contain the CS807 8-97 Additional Insured Endorsement. The Pennsylvania General and OneBeacon America policies contain the CG2033 Additional Insured Endorsement.

Please refer to the CS 807 8-97 Additional Insured Endorsement form which reads in pertinent part as follows:

AUTOMATIC ADDITIONAL INSUREDS<br>
INCLUDING COMPLETED OPERATIONS TO THE EXTENT<br>
REQUIRED BY AN INSURED CONTRACT

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LAIBILITY COVERAGE PART
The following is added to WHO IS AN INSURED (Section II):

1.  To the extent it is required by the terms of an "insured contract" which requires you to add by endorsement as an additional insured a person or organization, WHO IS AN INSURED (Section II) is amended to include as an insured such person or organization ("additional insured") but only with respect to:

    (a) Vicarious liability arising out of your ongoing operations performed for the additional insured; or

    (b) Liability arising out of any act or omission of the additional insured for which you have entered into an enforceable "insured contract" which obligates you to indemnify the additional insured, or to furnish insurance coverage for the additional insured, and arising out of your ongoing operations for that additional insured.

With respect to the insurance afforded these additional insureds, the following exclusions apply:

2.  This insurance does not apply to "bodily injury," or "property damage" occurring after:

    (a) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs), to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

    (b) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principle as a part of the same project.

This exclusion does not apply to the extent that an "insured contact" requires that you assume the tort liability of the additional insured arising out of a risk that would otherwise be excluded by this exclusion. ....

This endorsement provides only ongoing operations coverage. The insured had completed their work and left the site prior to any claim being made. In additional the housing units had been put to their intended use. As such, your Absher-Pacific is not entitled to additional insured coverage under the North Pacific policies at issue.

Jonathan Dirk Holt
Scheer & Zehnder
5/13/2009
Page 3

Please refer to the CG2033 Additional Insured Endorsement found in the Pennsylvania
General and OneBeacon America policies. There are slight differences in the form on each
policy. They generally read as follows:

> CG 20 33 10 01
>
> ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS –
> AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT
> WITH YOU
>
> This endorsement modifies insurance provided under the following.
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> A. Section II Who Is An Insured is amended to include as an insured any person
> or organization for whom you are performing operations when you and such
> person or organization have agreed in writing in a contract or agreement that
> such person or organization be added as an additional insured on your policy.
> Such person organization is an additional insured only with respect to liability
> arising out of your ongoing operations performed for that insured. A person's or
> organization's status as an insured under this endorsement ends when your
> operations for that insured are completed.
>
> B. With respect to the insurance afforded to these additional insureds, the
> following additional exclusions apply;
>
> 2. Exclusions
>
> This insurance does not apply to:
>
> a. "Bodily injury", "property damage" or "personal and advertising injury" arising
> out of the rendering of, or the failure to render, any professional architectural,
> engineering or surveying services, including
>
> (1) The preparing, approving, or failing to prepare or approve, maps, shop
> drawings, opinions, reports, surveys, field orders, change orders or drawings and
> specifications; and
>
> (2) Supervisory, inspection, architectural or engineering activities
>
> b, "Bodily injury" or "property damage" occurring after:
>
> (1) All work, including materials, parts or equipment furnished in connection with
> such work, on the project (other than service, maintenance or repairs) to be
> performed by or on behalf of the additional insured(s) at the site of the covered
> operations has been completed; or
>
> (2) That portion of "your work" out of which the injury or damage arises has been
> put to its intended use by any person or organization other than another
> contractor or subcontractor engaged in performing operations for a principal as a
> part of the same project.

An organization's status as an additional insured under this endorsement ends when the
named insured's work is completed. Here, PTI's work was completed many years ago and,
therefore, Absher-Pacific is not an additional insured under this endorsement. Absher-Pacific

Jonathan Dirk Holt
Scheer & Zehnder
5/13/2009
Page 4

is not entitled to additional insured status for the tendered litigation under these endorsements as all of PTI's work was completed before the policies with these endorsements incepted.

In summary, Absher-Pacific is not an additional insured under the CS807 or CG2033 endorsements and is not entitled to a defense or indemnity under the PTI's policies. PTI had completed its operations and the project had been put to its intended use long ago. The allegations in the tendered litigation involve the completed operations of the PTI. Therefore, OneBeacon will not provide your Absher-Pacific with a defense or indemnity.

This letter is based on the material submitted to date. This letter is not intended to be a final position as to all provisions of the policy that may preclude coverage. This letter is not intended to waive any rights or defenses to coverage available to OneBeacon. OneBeacon reserves the right to amend its coverage position based upon new information. OneBeacon's rights in regards to this matter are expressly reserved, whether asserted herein or not.

Sincerely,

OneBeacon Insurance Company, as administrator of select North Pacific Insurance Company policies
Pennsylvania General Insurance Company
OneBeacon America Insurance Company

Robert P. Joyce
Claims Consultant
OneBeacon Insurance
505 N. Brand Blvd.
Suite 1500
Glendale, CA. 91203
818-539-2620
rjoyce@onebeacon.com

cc:   Plumbing Today, Inc.
      17675 State Route 536
      Mount Vernon, WA.  98273

Ex. C, pg.27