1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
8                             AT SEATTLE
9
10   ABSHER CONSTRUCTION              CASE NO. C10-5821JLR
     COMPANY, et al.
11                                    ORDER DENYING PLAINTIFFS'
                        Plaintiffs,   MOTION FOR SUMMARY
12                                    JUDGMENT
                v.
13
     NORTH PACIFIC INSURANCE
14   COMPANY, et al.,
15                      Defendants.
16
                    I.      INTRODUCTION
17
        Before the court is Plaintffs Absher Construction Company and Pacific
18
     Components, Inc. d/b/a Absher Pacific Joint Venture's (collectively "Absher Pacific")
19
     motion for summary judgment.  (Mot. (Dkt. # 24).)  This is an insurance coverage action,
20
     and Absher Pacific has moved for summary judgment with respect to whether the
21
     defendant insurance companies breached their duty to defend in bad faith, whether they
22

ORDER- 1

are thereby estopped from denying coverage and so are liable for the settlement amount that Absher Pacific agreed to pay in the underlying litigation, and whether they are liable for bad faith claims handling irrespective of their obligations to provide a defense to Absher Pacific. (*See* Mot. at 1-2, 6, 18-21.) Having considered the motion, all submissions of the parties both in support and in opposition to the motion, the remainder of the record, and the relevant law, the court DENIES the motion.[1]

## II. BACKGROUND

### A. The New Holly Development

In 1997 the Seattle Housing Authority ("SHA") entered into construction contracts with Absher Pacific for the construction of a housing development, known as the New Holly Redevelopment Project ("New Holly"). (Holt Decl. Ex. 3 (SHA Compl.) at 26 ¶ 1.2 and at 27 ¶¶ 3.2-3.3.) New Holly was envisioned to comprise both rental housing and houses that would be for sale. (*See id.* Ex. 1 (New Holly Homeowners Association ("HOA") Compl.) at 5, ¶ 4.) Work began on the for-rent housing on March 5, 1998 and ended on November 30, 1999. (Bedell Decl. (Dkt. # 52) Ex. 1 (Clement Decl.) at 9 (Notice of Completion); Ex. 7 at 50 (Notice of Completion).) Work began on the for-sale

---

[1] No party has requested oral argument. Federal Rule of Civil Procedure 56 does not require a hearing where the opposing party does not request it. *See, e.g.*, *Demarest v. United States*, 718 F.2d 964, 968 (9th Cir. 1983). The parties have fully briefed the matter and submitted various declarations and documentary evidence. (*See, e.g.*, Dirk Decl. (Dkt. # 25); Love Decl. (Dkt. # 26); Blackburn Decl. (Dkt. # 48); Schlenker Decl. (Dkt. # 50); Kazarian Decl. (Dkt. # 51); Bedell Decl. (Dkt. # 52); Thatcher Decl. (Dkt. # 53).) Accordingly, the court determines that this matter is appropriate for disposition without oral argument.

units on August 12, 1999 and ended on December 15, 2002.  (*Id.* Ex. 1 (Clement Decl.) at 10 (Notice of Completion); Ex. 7 at 49 (Notice of Completion).)

**B.  The PTI Subcontract**

In performing its contract with SHA, Absher Pacific subcontracted with Plumbing Today, Inc. ("PTI") for installation of a hydronic heating system at New Holly.  (Bedell Decl. Ex. 2 (Tonningas Decl.) ¶¶ 4-5, 9-10; Compl. (Dkt. # 1) ¶ 3.2.)  PTI provided and installed plumbing fixtures as part of the hydronic heating system.  (*See* Holt Decl. Ex. 3 at 33 (PTI Subcontract).)  PTI's subcontract with Absher Pacific required PTI to obtain liability insurance naming Absher Pacific as an additional insured without reservation or limitation.[2]  (*Id.* Ex. 3 (PTI Subcontract) at 37 ¶ 10(a).)

**C.  The New Holly HOA Complaint and the SHA Complaint**

In 2008, the New Holly HOA brought an action against SHA alleging defects in the hydronic heating system.  (Holt Decl. Ex. 1 (New Holly HOA Compl.).)  The New Holly HOA Complaint alleged that the hydronic heating systems had been failing since "at least 2003."  (*Id.* Ex. 1 at 7 ¶ 9.).

---

[2] The PTI Subcontract states, in pertinent part:

Subcontractor [PTI] shall submit to Absher Pacific a Certificate of Insurance (i) naming Absher Pacific and the Owner [SHA] as additional Insureds without limitation, qualification or reservation, (ii) endorsed to be primary and non-contributory with any insurance maintained by Absher Pacific; (iii) containing a waiver of rights of subrogation against Absher Pacific and the Owner, and (iv) containing a Severability of Interest in favor of Absher Pacific and the Owner.

(Holt Decl. Ex. 3 (PTI Subcontract) at 37 ¶ 10(a).)

1    In 2009, SHA filed a separate suit against Absher Pacific as SHA's general

2    contractor with respect to New Holly.[3] (*Id.* Ex. 2 (SHA Compl.).) The SHA Complaint

3    alleges that Absher Pacific breached its duty to defend and indemnify SHA from all

4    claims arising from Absher Pacific's work on the New Holly project, that Absher Pacific

5    failed to obtain insurance coverage for SHA as required by the general contract, that

6    Absher Pacific breached its contract and express warranty, and that Absher Pacific was

7    negligent in performing its work by providing and installing defective components. (*See*

8    *generally id.* Ex. 2.) The SHA Complaint specifically references the New Holly HOA

9    Complaint. (*Id.* Ex. 2 at 19 ¶ 3.12.) The SHA Complaint also specifically alleges that

10   the hydronic heating systems began to prematurely fail "[a]fter NewHolly's completion."

11   (*Id.* Ex. 2 at 18 ¶ 3.8.)

### D. Absher Pacific's Tender of Defense

13   In April 2009, Absher Pacific tendered its defense of the SHA Complaint to PTI's

14   insurers. (Holt Decl. Ex. 3 at 22-47 (4/22/09 Absher Pacific tender letter).) The

15   addressees of Absher Pacific's tender letter included Defendants North Pacific Insurance

16   Company ("North Pacific") and Assurance Company of America ("Assurance"). (*See id.*

17   Ex. 3 at 22.) The tender letter included a copy of the SHA Complaint, but not the New

18   Holly HOA Complaint. (*See id.*) The tender letter also included incomplete copies of the

19   contracts between Absher Pacific and PTI. (*See id.*) Subsequently, Defendant

---

21   [3] SHA also sued the two entities that comprised the joint venture Defendant Absher
22   Construction Company and Defendant Pacific Components, Inc. (Holt Decl. Ex. 2 (SHA
     Compl.).)

OneBeacon American Insurance Company ("OneBeacon"), which responded to Absher Pacific's tender letter, obtained complete copies of both of these contracts. (*See* Blackburn Decl. ¶¶ 3-4, Exs. C, D.)

### E. OneBeacon's Denial of Absher Pacific's Tender

On May 13, 2009, OneBeacon responded to Absher Pacific's tender letter on behalf of its insured, PTI, listing policy number OOR 808958 by Defendant Pennsylvania General Insurance Company ("Pennsylvania General"), policy numbers C01-14974 and C02-14974 by North Pacific, and policy number COR808958 by OneBeacon. (Holt Decl. Ex. 4 at 48-51 (5/13/09 OneBeacon denial letter).) In its letter, OneBeacon denied Absher Pacific's tender of defense of the SHA Complaint with respect to all of the foregoing policies. (*See id.* at 48.) OneBeacon denied coverage with respect to the North Pacific policies stating that the policies provided "only ongoing operations coverage," and "[t]he insured had completed their [sic] work and left the site prior to any claim being made." (*Id.* at 49.) OneBeacon denied coverage with respect to Pennsylvania General and OneBeacon policies based on the Additional Insured Endorsements found in those policies. (*Id.* at 50-51.) OneBeacon stated that "[a]n organization's status as an additional insured under this endorsement ends when the named insured's work is completed." (*Id.* at 50.) OneBeacon further stated that "all of PTI's work was completed before the policies with these endorsements incepted." (*Id.* at 51.)

### F. Assurance's Initial Failure to Respond to Absher Pacific's Tender

Assurance did not initially respond to Absher Pacific's April 2009 tender letter. (Holt Decl. ¶ 6.) On June 10, 2009, having received no response from Assurance, Absher

Pacific re-tendered the claims to Assurance and the other carriers, and invited the carriers to attend an upcoming mediation.  (*Id.* Ex. 5 (6/10/09 Absher Pacific re-tender letter); Bedell Decl. (Dkt. # 52) ¶ 6, Ex. 5.)  Assurance likewise failed to respond to this letter. (*See* Holt Decl. ¶¶ 6, 8.)  Assurance has provided testimony from its claims handler that although the April 2009 letter is in Assurance's file, the claims handler does not recall ever seeing it before July 2010, and has no record of ever receiving the June 2009 letter. (Thatcher Decl. ¶¶ 7-8.)

### G.  The New Holly Settlement

In September 2009, Absher Pacific, SHA, New Holly HOA, and others entered into a settlement agreement with respect to both the New Holly HOA Complaint and the SHA Complaint.  (Love Decl. (Dkt. # 26) Ex. 4 (Settlement Agreement).)  On behalf of Absher Pacific, Arrowood Indemnity Company ("Arrowood"), Absher Pacific's carrier, paid $2.5 million to New Holly HOA.  (*Id.* Ex. 4 at 1363 ¶ 2.1.)  On behalf of SHA, the Housing Authority Risk Retention Group, Inc. ("HARRG"), SHA's risk retention group, paid $1 million to New Holly HOA.  (*Id.*)  As part of the settlement, Absher Pacific assigned it claims against PTI and PTI's carriers (who are the defendants in this action) to Arrowood and HARRG.[4]  (Love Decl. Ex. 4 (Settlement Agreement) at 1365 ¶ 2.12.)

---

[4] The court has previously ruled that HARRG and Arrowood are the real parties in interest with respect to this lawsuit.  (Order (Dkt. # 65) at 11-12.)  Pursuant to Federal Rule of Civil Procedure 17(a)(3), HARRG and Arrowood have properly ratified PTI's action herein. (HARRG Decl. (Dkt. # 74); Arrowood Decl. (Dkt. # 73).)

### H.  Assurance's Eventual Denial of Absher Pacific's Tender

In May 2009, Absher Pacific filed a third-party complaint against PTI with respect to the SHA Complaint.  (*See* Thatcher Decl. (Dkt. # 53) ¶ 2.)  PTI tendered its defense to Assurance, and Assurance accepted the tender under a reservation of rights in or about June 2009.  (*Id.* ¶¶ 2-3.)

In early July 2010, Assurance's claims handler for PTI's claim contacted Absher Pacific's counsel to discuss issues germane to the handling of Absher Pacific's claim against PTI.  (*Id.* ¶ 4.)  During the conversation, counsel for Absher Pacific mentioned that Assurance had never responded to Absher Pacific's additional insured tender.  (*Id.*)  Assurance's claims handler explained that she was unaware of Absher Pacific's tender.  (*Id.*)  Following this conversation, Assurance's claims handlers immediately opened a separate additional insured claims file for Absher Pacific, and sent follow up emails to Absher Pacific's counsel acknowledging the claim, explaining that the insurer could not find any additional insured endorsements for Absher Pacific, and requesting copies of the insurance certificates and/or additional insured endorsements from Absher Pacific.  (Thatcher Decl. ¶ 5; Kazarian Decl. (Dkt. # 49) ¶¶ 3-6, Exs. 2-3; *see also* Bedell Decl. Ex. 6 at 46.)  Assurance's claims handler also requested copies of the project completion dates on multiple occasions.  (Kazarian Decl. ¶¶ 5-6, Exs. 2, 3.)  Although Absher Pacific's counsel eventually sent the notices of completion to Assurance, he did not forward any certificates of insurance or additional insured endorsements during this time period.  (*See id.* ¶ 6, Ex. 3.)

In September 2010, after Absher Pacific had failed to provide the requested information, Assurance sent a letter denying Absher Pacific's claim because Assurance had not located any evidence at that time that Absher Pacific was an additional insured. (*Id.* ¶ 7, Ex. 4.) Notably, counsel for Absher Pacific with respect to the SHA complaint later produced the certificates of insurance and additional insured endorsements in response to a subpoena issued in the present litigation. (Bedell Decl. ¶ 9, Ex. 8.) In addition, Assurance produced several additional insured endorsements that list "Absher-Pacific Joint Venture" as a scheduled additional insured. (Love Decl. Ex. 2 at 388, 390, 392.)

## III.   ANALYSIS

### A.  Standards

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658.

1  The court is "required to view the facts and draw reasonable inferences in the light most

2  favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

3  **B.  Bad Faith and the Duty to Defend**

4  In Washington, the duty to defend is different from and broader than the duty to

5  indemnify. *Am. Best. Foods, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (Wash. 2010)

6  (citing *Safeco Ins. Co. of Am. v. Butler*, 823 P.2d 499, 504-05 (Wash. 1992)).  "The duty

7  to defend arises when a complaint against the insured, construed liberally, alleges facts

8  which could, if proven, impose liability upon the insured within the policy's coverage."

9  *Id.* (internal quotations omitted; citing *Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d

10  276, 281-82 (Wash. 2002)).   If the complaint is ambiguous, a court will construe it

11  liberally in favor of "triggering the insurer's duty to defend." *Id.*  However, if the claim

12  is clearly outside the policy's coverage, the insurer has no duty to defend. *Kirk v. Mt.

13  Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998) ("Although an insurer has a broad duty

14  to defend, alleged claims which are clearly not covered by the policy relieve the insurer

15  of its duty."); *Holly Mountain Res. v. Westport Ins. Corp.*, 104 P.3d 725, 731 (Wash Ct.

16  App. 2005) (citing *Vanport Homes*, 58 P.3d at 282 ("Only if the alleged claim is clearly

17  not covered by the policy is the insurer relieved of its duty to defend.")).

18  An insurance company must look beyond the allegations in the complaint if

19  "coverage is not clear from the face of the complaint but may exist." *Vanport Homes*, 58

20  P.3d at 282.  Similarly, an insurer "may" consider facts outside the complaint, "if (a) the

21  allegations are in conflict with facts known to or readily ascertainable by the insurer or

22  (b) the allegations of the complaint are ambiguous or inadequate." *Id.* (quoting *E-Z*

*Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 726 P.2d 439, 444 (Wash. 1986)). However, an insurer may not rely on facts extrinsic to the complaint in order to deny its duty to defend. *Vanport Homes*, 58 P.3d at 282.

An insurer acts in bad faith if its breach of the duty to defend is "unreasonable, frivolous, or unfounded." *Alea London, Ltd.*, 229 P.3d at 700. When an insurer acts in bad faith by improperly refusing to defend, Washington cases recognize a rebuttable presumption of harm and that coverage by estoppel is one appropriate remedy. *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126-27 (Wash. 1998) (citing *Butler*, 823 P.2d at 505). The duty of good faith, however, "is broad and all-encompassing, and is not limited to an insurer's duty to pay, settle, or defend." *St. Paul Fire and Marine Ins. v. Onvia, Inc.*, 196 P.3d 664, 669 (Wash. 2008). Thus, even where there would be no coverage or right to a defense under the policy terms, if an insurer mishandles a claim in bad faith, a cause of action based on this conduct remains viable. *Id.* at 668. Where coverage or a duty to defend would not be available under the policy terms, however, a rebuttable presumption of harm and coverage by estoppel are not available with respect to a cause of action for bad faith claims handling. *Id.* at 669.

Absher Pacific asserts both types of bad faith claims against Defendants. Absher Pacific asserts that Defendants' denial of a duty to defend was unreasonable, frivolous or unfounded based on the policy language. (*See* Mot. at 8-16.) Absher Pacific also asserts that Defendants' handling of its claims was in bad faith because Defendants variously did not conduct a proper investigation, improperly relied upon extrinsic evidence in evaluating their duty to defend, or unreasonably delayed in responding to Absher

Pacific's tender.  (*See* Mot. at 18-21.)  Because the two types of bad faith claims referenced above result in different consequences with respect to the presumption of harm and coverage by estoppel, the court will consider the claims separately.  The court will begin its analysis with Absher Pacific's claims for bad faith based on Defendants' denial of the duty to defend, and then turn to Absher Pacific's claims for bad faith based on Defendants' various alleged claims handling practices.

### C.  Defendants' Denial of a Duty to Defend Absher Pacific

#### 1.  North Pacific Policies

Both North Pacific policies contain the following additional insured endorsement amending Section II of the policy, entitled "Who Is An Insured."  (Love Decl. Ex. 3a at 493, Ex. 3b at 714.)  The endorsement states:

> 1.  WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization (called "additional insured") shown in the Schedule,[5] but only with respect to:
>
>    (a)  Vicarious liability arising out of your ongoing operations performed for the additional insured; or
>
>    (b)  Liability arising out of any act or omission of the additional insured for which you have entered into an enforceable "insured contract" which obligates you to indemnify the additional insured, or to furnish insurance coverage for the additional insured, arising out of your ongoing operations for that additional insured.

---

[5] Defendants note in their briefing that the organization named in the schedule is Defendant Absher Construction Company and not the joint venture Absher Pacific.  (OneBeacon Resp. (Dkt. # 47) at 3.)  However, OneBeacon did not deny coverage on this basis and did not assert in the course of their response to this motion that this discrepancy justified its denial.

1  (*Id.* (footnote added).)

2       An "insured contract" is defined in the policies (in relevant part) as "[t]hat part of

3  any other contract or agreement pertaining to your business . . . under which you assume

4  the tort liability of another party to pay for "bodily injury" or "property damage" to a

5  third person or organization." (*Id.* Ex. 3a at 458, Ex. 3b at 693.) The parties do not

6  appear to dispute that the contractual agreements between Absher Pacific and PTI

7  requiring PTI to obtain insurance on Absher Pacific's behalf constitute an "insured

8  contract." (*See* Mot. at 13 (Absher Pacific asserts that its subcontract with PTI is an

9  "insured contract, citing Holt Decl. Ex. 3 at 37 (PTI 3/99 subcontract at 5); *see*

10  OneBeacon Resp. at 7 ("Specifically at issue in the motion [is] . . . the 'insured contract'

11  portion of the policy.").)

12       Defendants assert that paragraph one of the endorsement constitutes a grant of

13  coverage to Absher Pacific as an additional insured, but limits that grant to "ongoing

14  operations" even when addressing an insured contract. (OneBeacon Resp. at 9.)

15  Accordingly, Defendants assert that because the SHA Complaint specifically alleges that

16  the hydronic heating systems began to prematurely fail "[a]fter NewHolly's completion"

17  (Holt Decl. Ex. 2 at 18 ¶ 3.8), the claim was clearly outside of the scope of policy's

18  coverage for "ongoing operations" based on the unambiguous language of the SHA

19  Complaint. (*See* OneBeacon Resp. at 11-12.)

20       The policy does not define "ongoing operations," but Washington courts have

21  interpreted similar "ongoing operations" clauses in a manner consistent with Defendants'

22  interpretation. In *Hartford Insurance Co. v. Ohio Casualty Insurance Co.*, 189 P.3d 195

(Wash. Ct. App. 2008), the Washington Court of Appeals found that "the endorsement evinces an intent to provide coverage to the additional insured only for liability that arises while the work is still in progress," such as in "a course of construction work site accident involving bodily injury or property damages." *Id.* at 201-02 (quoting and relying upon *Pardee Constr. Co. v. Ins. Co. of the W.*, 92 Cal. Rptr. 2d 443, 454 (Cal. Ct. App. 2000)). Indeed, in evaluating the *Hartford* decision, a court in the Western District of Washington recently stated that it was "convinced that, if the issue were before the Washington Supreme Court, its decision would be consistent with *Hartford.*" *Davis v. Liberty Mutual Group*, 814 F. Supp. 2d 1111, 1120-21 (W.D. Wash. 2011); *see also Evanston Ins. Co. v. Westchester Surplus Lines Ins.*, No. 10-36133, 2011 WL 4543059, at *2 (9th Cir. Oct. 3, 2011) (unpublished) (relying upon the interpretation of the "ongoing operations" clause found in *Hartford*); *Arch Ins. Co. v. Scottsdale Ins. Co.*, No. C09-0602 RSM, 2010 WL 4365817, at *3 (W.D. Wash. Oct. 27, 2010) (relying upon the interpretation of the "ongoing operations" clause found in *Hartford*).[6]

---

[6] The court notes that, although the decision in *Valley Ins. Co. v. Wellington Cheswick, LLC*, No. C05-1886RSM, 2006 WL 3030282, at *4-*5 (W.D. Wash. Oct. 20, 2006) comes to a different conclusion with respect to the interpretation of an "ongoing operations" clause, it was decided prior to the Washington Court of Appeals decision in *Hartford*, 189 P.3d at 201-02. In light of the decision in *Hartford*, the court cannot conclude that *Wellington Cheswick* would be decided in the same manner today. In addition, in *Tri-Star Theme Builders, Inc. v. OneBeacon*, No. 09–17167, 2011 WL 1361468, at *2-*6 (9th Cir. Apr. 11. 2011), the Ninth Circuit also declined to follow the rationale in *Hartford*, 189 P.3dat 201-02. The court notes, however, that the *Tri-Star* opinion was decided under Arizona law and thus has limited, if any, value here. Further, as noted above, a later Ninth Circuit opinion, interpreting Washington law, expressly relied upon *Hartford* for its interpretation of an "ongoing operations" clause. *See Evanston Ins. Co.*, 2011 WL 4543059, at * 2. Accordingly, despite this limited foreign and outdated contrary authority, the court does not believe that *Hartford*, 189 P.3d at 201-02, *Davis*, 814 F. Supp. 2d at 1120-21, *Evanston Ins. Co*, 2011 WL 4543059, at *2, and *Arch Ins. Co.*, 2010 WL 4365817, at

Despite the forgoing authority, Absher Pacific nevertheless asserts that it was entitled to a defense under the North Pacific policies. First, Absher Pacific asserts that OneBeacon's denial of coverage with respect to the North Pacific policies did not comply with the general requirement in Washington that an insurer may not rely on facts extrinsic to the complaint to deny a duty to defend. (Mot. at 9 (citing *Truck Ins. Exch.*, 58 P.3d at 281), 12.) In its denial letter to Absher Pacific, OneBeacon stated that "[t]he endorsement provides only ongoing operations coverage," that "[t]he insured had completed their [sic] work and left the site prior to any claims being made," and that "the housing units had been put to their intended use." (Holt Decl. Ex. 4 at 49.) These statements are consistent with the policy language and the allegation in the SHA Complaint that the hydronic heating systems began to prematurely fail "[a]fter NewHolly's completion." (*Id.* Ex. 2 at 18 ¶ 3.8.) Thus, the court cannot conclude merely on the basis of the statements in OneBeacon's denial letter that OneBeacon improperly considered any extrinsic material.

Second, Absher Pacific asserts that, even if the court were to interpret the "ongoing operations" clause in the manner suggested by the *Hartford* decision, North Pacific would still owe Absher Pacific a duty to defend because the New Holly HOA complaint and the SHA complaint contain allegations against Absher Pacific "that were potentially covered." (*See* Mot. at 17.) Indeed, Absher Pacific asserts that the New

---

*3, represent the type of "equivocal" authority that the Washington Supreme Court indicated in *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 462-63 (Wash. 2007) and *Alea London*, 229 P.3d at 701, would be inappropriate for an insurer to rely upon when denying a duty to defend.

Holly HOA complaint alleges property damage "which may have begun as soon as its installation." (*Id.*) Although Absher Pacific did not provide a copy of the New Holly HOA Complaint with its tender, Absher Pacific asserts that had OneBeacon "done a good-faith investigation prior to declining the tender, OneBeacon would have obtained that complaint. . . ." (Reply (Dkt. # 56) at 3.) To review the specific allegations at issue, the SHA Complaint alleged that the hydronic heating systems did not begin to fail until "[a]fter New Holly's completion" (Holt Decl. Ex. 2 at 18 ¶ 3.8), whereas the New Holly HOA complaint alleged that the hydronic heating systems had been failing since "at least 2003" (*id.* Ex. 1 at 7). As the court understands the argument, Absher Pacific is asserting either that (1) due to the indefinite allegation in the New Holly HOA Complaint with respect to the timing of the heating systems' failure, Defendants were required to ignore the definite allegation in the SHA Complaint when rendering a decision on their duty to defend, or (2) despite the definite allegation in the SHA Complaint, the less definite allegation in the New Holly HOA Complaint created an ambiguity regarding the timing of the property damage that under Washington law Defendants were required to construe in Absher Pacific's favor.

The court is not persuaded by either argument. The only complaint that names Absher Pacific as a defendant is the SHA Complaint, and it plainly alleges that the hydronic heating systems began to fail "[a]fter NewHolly's completion." (Holt Decl. Ex. 2 at 18 ¶ 3.8.) This unambiguous language rendered the allegations in the SHA Complaint clearly outside the scope of the policy's coverage in light of the "ongoing operations" clause. *See Truck Ins. Exch.*, 58 P.3d at 282 (generally, "the duty to defend

must be determined only from the complaint"). Under these circumstances, the insurer has no duty to defend. *Holly Mountain*, 104 P.3d at 731 (citing *Truck Ins. Exch.*, 58 P.2d at 282).

Further, in light of these unambiguous allegations, the insurer was under no obligation to look beyond the complaint to determine its duty to defend. Washington courts have carved out limited exceptions to the general rule that the duty to defend must be determined from the face of the complaint. An insurer must conduct an investigation beyond the allegations contained in the complaint where coverage is not clear from the face of the complaint, and may consider facts outside the complaint if the allegations in the complaint are ambiguous or if facts outside the complaint are known to or readily ascertainable by the insurer. *Truck Ins. Exch.*, 58 P.3d at 282; *see also E-Z Loader Boat Trailers*, 726 P.2d at 444. None of the foregoing exceptions apply. The allegations in the complaint that the hydronic heating systems began to fail after New Holly's completion unambiguously negated coverage in light of the "ongoing operations" clause in the policy's endorsement.

Even if one were to conclude that the insurer should have obtained a copy of the New Holly HOA Complaint because it was "readily ascertainable," the outcome would be no different. The allegation in the New Holly HOA Complaint that the hydronic heating systems had been failing since "at least 2003" (Holt Decl. Ex. 1 at 7), is not in conflict with the allegation in the SHA Complaint that the hydronic heating systems began to fail "[a]fter NewHolly's completion" (Holt Decl. Ex. 2 at 18 ¶ 3.8). The two allegations are readily harmonized as describing property damage that has occurred since

at least 2003, but after New Holly's completion. There is no inconsistency, and thus no reason to conclude that the allegations in the two complaints create any ambiguity that might require the insurer to assume a duty to defend. It is true that if all the court were considering were the allegations in the New Holly HOA Complaint, it would impossible to determine if the property damage occurred during the insured's "ongoing operations" or not. This fact, however, does not mean that the insurer or the court must ignore the specific allegation in the SHA Complaint, which is the only complaint to which Absher Pacific is a defendant, that the hydronic heating systems began to fail "[a]fter NewHolly's completion" (Holt Decl. Ex. 2 at 18 ¶ 3.8).

Next, Absher Pacific asserts that even if the SHA Complaint alleged property damage outside of PTI's "ongoing operations," the North Pacific polices contain an exception to the "ongoing operations" clause "that permits coverage for liabilities assumed under an insured contract." (Mot. at 13.) The exclusion relied upon by Absher Pacific occurs immediately following the language quoted in paragraph one of the endorsement above, and reads, in pertinent part:

> 2. Additional Exclusion. This insurance does not apply to . . . "property damage" occurring after:
>
> (a) All work, including materials, parts or equipment furnished in connection with such work, on the project . . . to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or
>
> (b) That portion of "your work" out of which the injury or damages arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

> This exclusion does not apply to the extent that an "insured contract" requires that you assume the tort liability of the additional insured arising out of a risk that would otherwise be excluded by this exclusion.

(Love Decl. Ex. 3a at 493, Ex. 3b at 714.)  The final sentence provides an exception to the forgoing exclusion for property damage occurring after Absher Pacific's work at the site "has been completed" or after PTI's work "has been put to its intended use" for liability arising from an "insured contract."  (*Id.*)  In other words, the exclusion in paragraph two is not applicable if an "insured contract" requires the named insured (PTI) to assume the tort liability of the additional insured (Absher Pacific).

Absher Pacific argues that the exception in the final sentence of the exclusion applies, not only to the exclusion found in paragraph two of the endorsement, but also to the original insuring language for "ongoing operations" found in paragraph one of the endorsement.  (*See* Mot. at 12-13; Reply at 4-5.)  Accordingly, under Absher Pacific's interpretation, the policy would provide coverage with respect to liability arising out of an "insured contract" irrespective of whether the liability was also related to the insured's "ongoing operations."  The plain language of the exception, however, states (twice) that it applies to "this exclusion."  Because paragraph two is entitled "Additional Exclusion," the court cannot conclude that the exception contained within paragraph two applies to anything other than the exclusion found in paragraph two.

Further, Absher Pacific's interpretation is contrary to Washington law concerning the interpretation of insurance policies.  If there is no coverage under the terms of the insuring clause, coverage cannot be created based on the exceptions or qualifications

contained in the policy's exclusions.  In *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group*, 681 P.2d 875 (Wash. Ct. App. 1984), the insured argued that an exception to an exclusion effectively amended the coverage paragraph extending coverage to breach of contract claims.  *Id.* at 879.  The court held that the exception to the exclusion "did not enlarge upon the coverages to encompass nonaccidental contractual claims," because "[e]xclusion clauses do not grant coverage; rather they subtract from it." *Id.* at 880; *see also Nat'l Union Fire Ins. Co. v. NW Youth Serv.*, 983 P.2d 1144 (Wash. Ct. App. 1999) (ruling that exception to exclusion did not provide coverage because "[e]xclusion clauses do not grant coverage," but rather "subtract from it.").

Finally, Absher Pacific asserts that the "ongoing operations" clause in the North Pacific policies is distinguishable from the "ongoing operations" clause in the *Hartford* decision because the "ongoing operations" clause in the North Pacific policies contains the phrase "arising out of" your "ongoing operations."  (*See* Reply at 7-8.)  The "arising out of" language did not appear in the clause considered by the court in *Hartford*.  *See Hartford*, 189 P.3d at 201.  Relying on *Toll Bridge Auth. v. Aetna Ins.*, 773 P.2d 906, 908 (Wash. Ct. App. 1989), Absher Pacific asserts that under Washington law the phrase "arising out of" must be construed broadly.  (Reply at 6.)  In *Toll Bridge*, the Washington Court of Appeals broadly construed the phrase "arising out of" to mean "originating from," "having its origin in," "growing out of," or "flowing from."  773 P.2d at 908. Accordingly, Absher Pacific asserts that coverage would exist for liability "flowing from" and merely causally connected to its ongoing operations.  (Reply at 6.)  As such, if property damage could simply be causally connected to work performed during PTI's

ongoing operations, it would be covered under Absher Pacific's interpretation of the policy.

The court sees at least two problems with Absher Pacific's position. First, the Washington Supreme Court has recently indicated the *Toll Bridge* court's broad interpretation of the phrase "arising out of" may not be appropriately applied in some contexts. In *Alea London*, the insurer denied a duty to defend its insured based on an exclusion that stated that the insurance did not apply to any claim "arising out of" certain types of assaults or acts related to an assault. *Alea London*, 229 P.3d at 696. In justifying its decision, the insurer relied in part on the expansive definition of the phrase "arising out of" contain in the *Toll Bridge* decision. *Id.* at 698. The Washington Supreme Court rejected the application of the *Toll Bridge* court's definition of "arising out of" because the *Toll Bridge* court had not considered the specific factual situation and allegations at issue in *Alea London*. *See id.* (". . . *Toll Bridge* did not consider an allegation that postaccident negligence by the insured caused injuries."). Ultimately, the insurer's interpretation of Washington law, including the *Toll Bridge* decision, failed to persuade the Washington Supreme Court their interpretation of the insurance contract was correct. *Id.* at 699.

Second, if the court were to accept the broad construction of the phrase advocated by Absher Pacific, it would effectively write the word "ongoing" out of the policy. The construction that Absher Pacific advocates is really equivalent to the phrase "arising out of your operations." Yet, if this were the parties' intent, there would be no need to include the word "ongoing" as a modifier of the word "operations." Thus, like the

Washington Supreme Court in *Alea London*, Absher Pacific's interpretation of Washington law, including its advocacy for a broad definition of "arising out of" based on the *Toll Bridge* decision, fails to persuade the court that its interpretation of the insurance contract is correct. *See also Davis*, 814 F. Supp. 2d at 1121 (rejecting similar argument that the phrase "arising out of" requires that damage that has a causal connection to the named insured's work while on the property is covered). Based on the foregoing, the court cannot conclude that Absher Pacific is entitled to summary judgment that Defendants' denial of a duty to defend based on the language of the North Pacific polices and the allegations contained within the SHA complaint was "unreasonable, frivolous, or unfounded," *Alea London, Ltd.*, 229 P.3d at 700, and therefore in bad faith.

## 2. Pennsylvania General and OneBeacon Policies

The Pennsylvania General and OneBeacon policies both contain "ongoing operations" clauses similar, but not identical, to the clauses found in the North Pacific policies. (Love Decl. Ex. 3c at 906, Ex. 3d at 1235.) The additional insured endorsement amending Section II of these policies, entitled "Who Is An Insured," states, in relevant part:

> A. Section II – Who Is An Insured is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are complete.

(*Id.*)

The OneBeacon policy's additional-insured endorsement uses the same language above, but adds the following exclusion:

> B. With respect to the Insurance afforded to these additional insured, the following additional exclusions apply:
>
> 3. Exclusions
>
> This insurance does not apply to:
>
> **************
>
> b. "Bodily injury" or "property damage" occurring after:
>
> (1) All work, including materials, parts or equipment furnished in connection with such work, on the project . . . to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or
>
> (2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(Love Decl. Ex. 3d at 1235.)

The primary differences between these policies and the North Pacific policies are that the Pennsylvania General policy does not contain any relevant exclusions to the endorsement at issue, and although the One Beacon America policy contains an exclusion that is similar to the one in the North Pacific policies, the exclusion does not contain the exception for "insured contracts" that produced so much argument by the parties with respect to the North Pacific policies. (*Compare* Love Decl. Exs. 3a at 493 and 3b at 714 *with* Exs. 3c at 906 and 3d at 1235.) Without this exception, based on the allegation in the complaint that the hydronic heating systems did not begin to fail until "[a]fter

NewHolly's completion" (Holt Decl. Ex. 2 at 18 ¶ 3.8), the grounds for denial of

coverage under the OneBeacon policy would include not only the "ongoing operations"

clause, but also the exclusions for "operations" that had been "completed" and for work

that "has been put to its intended use." (Love Decl. Ex. 3d at 1235.) The court's analysis

above concerning the "ongoing operations" clause in the North Pacific policies applies

equally here with respect to the Pennsylvania General and OneBeacon policies.

Accordingly, the court also denies summary judgment with respect to Absher Pacific's

claim that Defendants denial of a duty to defend based on the language of these policies

and the allegations contained in the SHA Complaint was "unreasonable, frivolous, or

unfounded," *Alea London, Ltd.*, 229 P.3d at 700, and therefore in bad faith.

### 3. Assurance Policy

Assurance issued a policy to PTI encompassing policy periods from June 14, 1998

to June 14, 1999 and from June 14, 1999 to July 29, 1999. (Love Decl. Ex. 1 at 10, 182,

385-86.) The grant of coverage states, in relevant part, that "[t]his insurance applies

to . . . property damage only if . . . [t]he property damage occurs during the policy

period." (Love Decl. Ex. 1 at 73.) The Assurance policy also contains additional insured

coverage where a "work contract" so requires. Specifically, the policy provides:

SECTION II – WHO IS AN INSURED

*********** 

f.  Any person or organization . . . which requires in a "work contract" that
such person or organization be made an insured under this policy.
However, such person or organization shall be insured only with respect to
covered . . . "property damage" . . . which results from "your work" under
that "work contract."

The coverage afforded to such person or organization does not apply to . . . "property damage" occurring after the earliest of the following times:

(1) When "your work" under the "work contract" . . . has been completed.

(2) When that portion of "your work" under the "work contract" out of which any injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

(3) When our coverage for you under this policy or a renewal of this policy terminates and is not continued by other insurance provided by us.

(Love Decl. Ex. 1 at 80.)[7]

Based on the allegation in the SHA Complaint that the hydronic systems began to prematurely fail "[a]fter NewHolly's completion" (Holt Decl. Ex. 2 at 18 ¶ 3.8), Assurance could have denied coverage under the "completed" work exclusion or the exclusion for work that "has been put to its intended use." (*See* Love Decl. Ex. 1 at 80.) In its denial letter, Assurance mentions that it can find no additional insured endorsement for "completed operations" coverage, but does not reference any specific policy language. (Holt Decl. Ex. 7 at 55.) Instead, Assurance states that it is denying coverage because it was unable, as of that time, to find an additional insured endorsement that named Absher Pacific. (*Id.*) Endorsements and/or certificates of insurance naming Absher Pacific were eventually located in the course of this litigation (*see* Bedell Decl.

---

[7] The policy defines a "work contract" as "a written agreement into which you enter for work performed by you or on your behalf." (Love Decl. Ex. 1 at 265.) The parties do not raise any dispute concerning whether the contract between PTI and Absher Pacific constituted a "work contract."

Ex. 8 at 52-61; Love Decl. Ex. 2 at 388, 390, 392), but Assurance has not altered its

position that, based on the allegations in the SHA Complaint and the language of its

policy, it did not owe a duty to defend to Absher Pacific for completed operations (*see*

Assurance Resp. (Dkt. # 49) at 14-15). The court agrees, and accordingly also denies

Absher Pacific's motion for summary judgment that Assurance's declination of a duty to

defend was "unreasonable, frivolous, or unfounded," *Alea London, Ltd.*, 229 P.3d at 700,

and therefore in bad faith.

### D. Coverage by Estoppel

The court has denied Absher Pacific's motion for summary judgment that

Defendants' denials of a duty to defend under the various provisions of the policies at

issue were in bad faith. (*See supra* § III.C.) As a result, the court must also deny

summary judgment with respect to Absher Pacific's claims for coverage by estoppel. As

noted above, where coverage or a duty to defend are not available under the policy terms,

a rebuttable presumption of harm and coverage by estoppel are likewise unavailable with

respect to claims for bad faith claims handling. *Onvia*, 196 P.3d at 669. Because the

court has denied summary judgment with respect to Absher Pacific's claims for bad faith

denial of the duty to defend based on the language of the policies, it cannot grant

summary judgment with respect to Absher Pacific's claims for coverage by estoppel.

### E. Bad Faith Claims Handling

In addition to its claims that Defendants denied their duties to defend in bad faith,

Absher Pacific also moves for summary judgment with respect to its allegations that

Defendants engaged in acts of bad faith claims handling. As noted above, even where

there is no coverage under a policy and an insurer is not obligated to defend its insured, a

cause of action based on bad faith claims handling remains available to the insured.

*Onvia*, 196 P.3d at 668.  In Washington, bad faith handling of an insurance claim is a tort

and is analyzed under general tort principles:  duty, breach of that duty, and damages

proximately caused by the breach.  *Mut. Of Enumclaw Ins. Co. v. Dan Paulson Constr.*

*Co.*, 169 P.3d 1, 8 (Wash. 2007).  To establish bad faith, an insured is required to show

that the breach was unreasonable, frivolous, or unfounded.  *Kirk*, 951 P.2d at 1126.

Ordinarily, whether an insurer acts in bad faith is a question of fact for the jury, unless

reasonable minds could reach but one conclusion.  *See Smith v. Safeco Ins. Co.*, 78 P.3d

1274, 1277 (Wash. 2003).  The facts concerning OneBeacon's handling of Absher

Pacific's claim with respect to the North Pacific, Pennsylvania General, and OneBeacon

policies are disparate from the facts concerning Assurance's handling of OneBeacon's

claim under its own policy.  Accordingly, the court will deal with these claims separately.

### 1.  OneBeacon's Claims Handling

Absher Pacific's alleges that OneBeacon mishandled its claim by improperly

considering materials extrinsic to the complaint and by failing to conduct a reasonable

investigation, including correctly determining applicable policy language, before

declining to defend.  (*See* Mot. at 11-12, 18-19.)  The court has already considered

Absher Pacific's assertion that OneBeacon improperly relied upon extrinsic materials and

concluded that Absher Pacific failed to submit evidence upon which the court could

conclude on summary judgment that Absher Pacific had indeed considered any such

materials.  (*See supra* § III.C.1.)  Accordingly, the court also denies Absher Pacific's

motion for summary judgment that OneBeacon's alleged consideration of extrinsic materials constituted bad faith claims handling.

Absher Pacific also asserts that OneBeacon mishandled its claim in bad faith by conducting an inadequate investigation. An insured may sue an insurer for a bad faith investigation even where the insurer ultimately correctly determines there is no coverage. *Onvia*, 196 P.3d at 668 (relying on *Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933 (Wash. 1998)). Here, Absher Pacific asserts that OneBeacon failed to conduct a reasonable investigation prior to denying a defense because it did not first obtain a copy of the New Holly HOA Complaint and did not accurately quote policy language in its denial letter. (*See* Mot. at 18-19; Reply at 2-3.)

First, as the court explained above (*see supra* § III.C.1), OneBeacon was not obligated to obtain a copy of the New Holly HOA Complaint because the allegations in the SHA complaint "were neither ambiguous nor inadequate" with respect to OneBeacon's duty to defend. *See Am. Best Food, Inc. v. Alea London, Ltd*, 158 P.3d 119, 129-30 (Wash. Ct. App. 2007), *rev'd in part and aff'd in relevant part*, 229 P.3d 693 (Wash. 2008).[8] Accordingly, no such investigation of materials extrinsic to the SHA complaint was necessary. *Id.*

---

[8] Although the Washington Supreme Court reversed portions of Court of Appeals' decision in *Alea London*, 158 P.3d 119, it expressly approved of the portion of the Court of Appeals' decision concerning the duty to investigate and bad faith . *See Alea London*, 229 P.3d at 699 n.4 ("We also accepted review of [plaintiff's] claim that Alea failed to do an adequate investigation. However, it does not appear that any failure to investigate was relevant to Alea's legal representation or rejection of its duty to defend. We do not disturb the Court of Appeals holding on this issue.")

1    The court also is unpersuaded by Absher Pacific's argument with respect to the

2    variation in policy language that OneBeacon cited in its denial letter.  In its denial letter,

3    OneBeacon implicitly acknowledged that it was not quoting directly from the actual

4    policy language of the Pennsylvania General and OneBeacon policies when it stated that

5    "[t]here are slight differences in the form on each policy," but "[t]hey generally read as

6    follows . . . ."  (Holt Decl. Ex. 4 at 50 (5/13/09 denial letter).)  Absher Pacific, however,

7    has failed to assert that the variations in policy language were material to the insurer's

8    decision regarding its duty to defend or that quoting the actual language would have led

9    OneBeacon (or Absher Pacific) "to a different understanding of the facts, or a different

10   result."  *Alea London*, 158 P.3d at 129-30.   In *Alea London*, the Washington Court of

11   Appeals affirmed the trial court's dismissal on summary judgment of the insured's claim

12   for bad faith investigation because the insured had not demonstrated that further

13   investigation would have led to a different result.  *Id.*  Likewise, here, Absher Pacific has

14   failed to produce any evidence that had OneBeacon quoted the language accurately the

15   analysis with respect to its duty to defend would have changed.

16        Further, an essential element of the tort of bad faith claims handling is harm to the

17   insured or damages.  *See Dan Paulson Constr. Co.*, 169 P.3d at 8; *Coventry*, 961 P.2d at

18   935-36 ("As an element of every bad faith or CPA action, however, an insured must

19   establish it was harmed by the insurer's bad faith acts.") (citing *Butler*, 823 P.2d at 503).

20   Because the court has denied Absher Pacific's motion for summary judgment with

21   respect to Defendants' bad faith denial of their duty to defend, the court cannot conclude,

22   at this point in the litigation, that Absher Pacific's damages are presumed.  *See Onvia*,

196 P.3d at 669. Absher Pacific, however, has submitted no evidence that OneBeacon's alleged mishandling of its claim resulted in any damages. Without such evidence, this court cannot conclude that Absher Pacific is entitled to summary judgment on this issue.

In addition to the foregoing, OneBeacon has asserted that it did conduct an investigation of Absher Pacific's claims. For example, OneBeacon has submitted evidence that although Absher Pacific failed to produce complete copies of its contracts with PTI in its tender letter (*see* Holt Decl. Ex. 3), Absher Pacific nevertheless obtained complete copies (*see, e.g.*, Balckburn Decl. Exs. C, D). Accordingly, the court finds that a jury is entitled to consider evidence with respect to OneBeacon's actual investigation of Absher Pacific's claim, and denies Absher Pacific's motion for summary judgment on this issue.

## 2. Assurance's Claims Handling

Absher Pacific seeks summary judgment with respect to Assurance's initial 15-month delay in responding to Absher Pacific's tender. The court acknowledges that this is an extraordinarily long period of time for an insurer to fail to respond to its insured's tender. Absher Pacific relies primarily on *Truck Insurance Exchange v. Vanport Homes, Inc.*, 58 P.3d 276 (Wash. 2002), to support its motion for summary judgment with respect to its claim for bad faith claims handling. (*See* Mot. at 20; Reply at 9.) In *Vanport Homes*, the Washington Supreme Court found a similar delay of over a year to be bad faith as a matter of law. *Id.* at 283-84. The court, however, finds *Vanport Homes* to be distinguishable here. In *Vanport Homes*, there is no indication that the insurer offered any explanation for its year-long delay. *See generally id.* Further, once the insurer in

*Vanport Homes* did respond and deny coverage, it misrepresented to its insured that it had conducted a thorough investigation even though an internal memorandum indicated that there was little or no investigation. *Id.* at 280. In addition, the insured twice requested an explanation of the denial letter with no response from the insurer. *Id.*

Unlike the insurer in *Vanport Homes*, Assurance has offered explanations for its delay and asserted that the delay was not done in bad faith but rather was due to a mistake or mere inadvertence. (Assurance Resp. at 9-10 (citing Thatcher Decl.).) Once Assurance's claims handler learned of the mistake, Assurance responded promptly to the tender. One of Assurance's claims handlers has submitted testimony that she first became aware of Absher Pacific's April 22, 2009 tender letter on July 8, 2010. (Thatcher Decl. ¶ 4, Ex. 3.) She has also testified that had she been aware of the April 22, 2009 tender she would have set up a separate additional insured file, and in fact did so as soon as she learned of the April 22, 2009 tender in July 2010. (*Id.* ¶ 6.) Assurance responded in writing to Absher Pacific's tender on July 19, 2010, acknowledging the claim, indicating that it had established a claims file, and seeking information with respect to the claim. (Kazarian Decl. ¶ 5, Ex. 2.) When Absher Pacific failed to respond, Assurance contacted Absher Pacific again on August 16, 2010, seeking the same information. (*Id.* ¶ 6, Ex. 3.) Assurance ultimately sent its denial letter on September 20, 2010. (*Id.* ¶ 7, Ex. 4.)

The question of bad faith is ordinarily a question of fact. *See Smith*, 78 P.3d at 1277. Further, as long as an insurance company acts with honesty, bases its decision on adequate information, and does not overemphasize its own interests, a claim for bad faith

claims handling will not lie against an insurer on the basis of a good faith mistake. *Coventry*, 961 P.2d at 937-38. Although the delay here was long, the foregoing facts regarding Assurance's delay in responding to Absher Pacific's tender should be weighed by the jury. *See Butler*, 823 P.2d at 506 (explaining that because the insurer advances explanations for each act of alleged bad faith, there are material issues of fact in dispute). Accordingly, the court declines to grant summary judgment with respect to whether Assurance's delay in responding to Absher Pacific's tender constituted bad faith claims handling.

Absher Pacific also alleges that Assurance failed to conduct an adequate investigation when it denied coverage based on its inability to find an additional insured endorsement that specifically named Absher Pacific. (Mot. at 19-20.) Assurance describes the electronic search it conducted for the additional insured endorsements (Kazarian Decl. ¶¶ 3-4), but does not otherwise provide an explanation as to why it was unable to uncover the endorsements with respect to its own policy (*see id.*). Nevertheless, Assurance did ask Absher Pacific twice if it had any information concerning the applicable additional insured endorsements. (Kazarian Decl. ¶¶ 5-6, Exs. 2-3.) Absher Pacific did not respond to these requests. (*See id.* ¶¶ 5-6.) Because it could find no evidence of the additional insured endorsements at the time, Assurance ultimately denied coverage on this basis on September 20, 2010. (Kazarian Decl. ¶ 7, Ex. 4.) Subsequently, however, during the course of the present litigation, both Absher Pacific and Assurance ultimately discovered and produced evidence of Absher Pacific's status as

1  an additional insured under the Assurance policies.[9]  (*See* Bedell Decl. ¶ 9, Ex. 8; Love

2  Decl. Ex. 2 at 388, 390, 392.)  The court finds that under these facts Assurance has raised

3  a triable issue of fact with respect to the reasonableness of its investigation.  *See, e.g.*,

4  *Torino Fine Homes, v. Mut. Of Enumclaw*, 74 P.3d 648, 650-51 (Wash. Ct. App. 2003)

5  (denying summary judgment with respect to the carrier's duty to conduct a reasonable

6  investigation where the carrier's mistake was in good faith and invited by the insured's

7  implicit representation and withholding of documents).

8       Finally, Absher Pacific argues that it is entitled to summary judgment with respect

9  to its claim that Assurance acted in bad faith when it considered materials outside the

10  complaint with respect to its coverage decision.  (Mot. at 15.)  Once it realized that

11  Absher Pacific had tendered a claim with respect to the SHA Complaint, Assurance asked

12  Absher Pacific to provide copies of the notices of completion with respect to PTI's work

13  at New Holly, and Absher Pacific complied with this request.  (Kazarian Decl. ¶¶ 5-6,

14  Ex. 2.)  Based on the dates of completion in the notices, along with the allegation in the

15  SHA Complaint that the hydronic heating systems began to fail "[a]fter NewHolly's

16  completion" (Holt Decl. Ex. 2 at 18 ¶ 3.8), Assurance determined that the alleged

17  property damage did not occur with its policy periods.  (Assurance Resp. at 6-7.)  Absher

18  Pacific argues that Assurance's reliance on the information contained in the notices of

19  completion violated the rule in Washington that ordinarily an insurer's duty to defend is

20  to be determined from the face of the complaint.  (Mot. at 15.)

21  _____

22  [9] The documents were produced by Absher Pacific's attorneys in the underlying lawsuit
with respect to the SHA complaint in response to a subpoena.  (*See* Bedell Decl. ¶ 9, Ex. 8.)

Once again, however, Absher Pacific fails to show how the absence of this information would have led "to a different understanding of the facts, or a different result," *Alea London*, 158 P.3d at 129-30, with respect to Assurance's response to its claim. Even if Assurance had not obtained or considered this information, it could have denied Absher Pacific's tender of its defense based on other grounds in the policy and solely on the allegations in the SHA Complaint. (*See supra* § III.C.3.) As noted above, harm is an essential element of Absher Pacific's claim, *see Dan Paulson Constr. Co.*, 169 P.3d at 8; *Coventry*, 961 P.2d at 935-36, and at this point in the litigation the court cannot find that Absher Pacific's damages are presumed (*see supra* § III.E.1). Absent evidence of harm or damages as a result of Assurance's alleged improper consideration of the notices, which Absher Pacific has not supplied, the court cannot grant summary judgment with respect to this claim.[10]

## IV. CONCLUSION

Based on the foregoing analysis and because the court has found that there are genuine issues of material fact for trial, the court DENIES Absher Pacific's motion for

---

[10] Because the court has denied Absher Pacific's motion for summary judgment with respect to its claim against Defendants for bad faith denial of its tender of defense and bad faith claims handling, the court does not reach issues concerning the proper measure of damages. Any such rulings, at this point in the litigation, would be premature.

summary judgment (Dkt. # 24).

Dated this 20th day of March, 2012.

_____
JAMES L. ROBART
United States District Judge